Colin M. GONZALES et al., Plaintiffs,

v.

FAIRFAX–BREWSTER SCHOOL, INC., Defendant.

Michael C. McCRARY et al., Plaintiffs,

v.

Russell L. RUNYON et al., Defendants,

Southern Independent School Association, Intervenor-Defendant.

Civ. A. Nos. 494–72–A, 495–72–A.

United States District Court,
E. D. Virginia,
Alexandria Division.

July 27, 1973.

Allison W. Brown, Jr., Washington, D. C., Robert M. Alexander, Jr., Arlington, Va., for plaintiffs.

Louis Koutoulakos, Arlington, Va., for defendant.

George S. Leonard, Washington, D. C., Edith D. Hakola, Arlington, Va., for intervenor-defendant.

Wesley E. McDonald, Sr., Arlington, Va., B. Austin Newton, Jr., Vienna, Va., Andrew A. Lipscomb, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

BRYAN, District Judge.

On May 17, 1954, the Supreme Court decided Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). The same year Fairfax-Brewster School was founded. It commenced operations in 1955. In 1958 Bobbe's Private School commenced operations. Neither school receives any assistance, financial or otherwise, from any state, local or federal agency; and each relies entirely on funds derived from tuition paid by students to support its operations. In 1956 Fairfax-Brewster commenced operation of a summer day camp and in 1967 Bobbe's did the same thing.

The enrollment at Fairfax-Brewster School grew from an average of 21 in the first year, 1955–56, to 223 in the year 1972–73. The rise in enrollment has generally been increasing except for the year 1969–70 when it dropped to 177 from the previous year's 208. The day camp's enrollment records are not available prior to 1962, but it shows a growth from 21 that year to 236 in the summer of 1972. An unusually large increase was shown in 1969 over the pre-

vious year, but this dropped back in 1970.

Bobbe's School grew from 5 in 1958 to an average of 200 in the years 1966–72. The day camp has averaged 100 students per year since its commencement. Neither school has ever had a black enrolled at either its day camp or school. Both schools require submission of an application form, a medical certificate as to the child's health, and a personal interview with the parties.

In early May of 1969, in response to an advertisement appearing in the "yellow pages" of the telephone directory similar to Pltf's Ex. 3, the parents of Colin M. Gonzales, both of whom are black, as is Colin, telephoned and then visited the school where they were shown around. Being pleased with what they saw, they completed, on forms then furnished them by the school, an application for the day camp and later a medical certificate prepared by a doctor. They subsequently submitted these to the school with a check for either $15 or $20. On May 16, 1969, Mr. and Mrs. Gonzales received the medical certificate and check in the mail with a form letter from Fairfax-Brewster (Pltf's Ex. 2) stating that the school was "unable to accommodate the application." No reason was given. Upon receipt of the letter Mr. Gonzales called the school, spoke to a person who identified himself as Captain Reiss,[1] and, in response to his inquiry as to why his son's application was rejected, was told "we are not integrated." Both Robert S. Reiss and Stuart Reiss denied any such conversation. They then stated that Colin, whom they believed was primarily interested in entering the first grade, was rejected, not on the basis of his race, but because his application lacked supporting data as to his previous schooling. Moreover, knowing that Colin had previously attended Crossroads Day Nursery, they claimed he would not qualify for the first grade. Consequently, since eligibil-

ity for the day camp was contingent on one's being qualified for the first grade, they felt it would be unfair to allow Colin to enter the day camp and then have to be withdrawn before the commencement of the academic year. In conclusion, the three Reisses all denied that it was the school or day camp's policy to exclude an applicant because of his race. The Court rejects this testimony as unbelievable and finds that the reason for the rejection was because Colin was black.

Subsequent to his son's rejection by Fairfax-Brewster, Mr. Gonzales telephoned Bobbe's School where, in answer to an inquiry as to whether it was integrated, he was told that only members of the Caucasian race were accepted. He filed no formal application with Bobbe's School.

Application was ultimately made for Colin at Congressional School, a non-public school, where he was accepted and did well.

In August, 1972, in response to an advertisement in the "yellow pages" of the telephone directory, Mrs. Sandra McCrary, who is black, called Bobbe's Private School to enroll her 2 year old son, Michael, in nursery school. After first inquiring as to the price, policies, meals, transportation and facilities for "toilet training," she asked if the school was integrated. Upon receiving a negative reply, she asked if the school accepted black children. The answer to this question was also "no." She filed no formal application with Bobbe's.

Bobbe's denied receiving telephone calls from either Mr. Gonzales or Mrs. McCrary; stated that it was not the policy of the school to exclude anyone because of race; denied that the school has ever told anyone that the school was not integrated; and stated that no one can be considered without a personal interview with the applicant and his parents or without a formal application being submitted with an accompanying

---

1. Capt. Stuart A. Reiss is the Chairman of the Board while his son, Robert S. Reiss, is the Administrative Director, and his daughter-in-law, Olga M. Reiss, the registrar.

medical certificate. Bobbe's introduced further testimony that no black child had ever applied for enrollment.

 The Court finds that the calls were made to Bobbe's and that both Colin Gonzales and Michael McCrary were denied admission because they were black. It is of no moment that no formal application was filed. It would be ridiculous to require this of the plaintiffs after they had effectively been told it was useless.

The policy of the schools with regard to exclusion of blacks was corroborated by Mrs. Bryant and Mr. Brooks. The former testified that in 1972 she telephoned Fairfax-Brewster and Bobbe's School to inquire about their admission policies. She testified that both schools told her they were not integrated and would not accept blacks. Mr. Brooks, a deputy Equal Employment Opportunity Commission officer with the Navy and Mrs. McCrary's supervisor, testified that after he became aware of the McCrary's allegations as raised in this suit against Bobbe's he decided to call for himself. He stated that during his telephone conversation of May 31, 1973, with a Mr. Gates at Bobbe's, he asked whether the school was accredited and if it was integrated. Upon receiving a negative response to the latter question Brooks further asked if blacks were admitted. Again he was told "no."

Colin Gonzales has filed an action against Fairfax-Brewster. Mr. and Mrs. McCrary, Michael McCrary, and Colin Gonzales have filed an action against Bobbe's. The sole basis for the actions is 42 U.S.C. § 1981.[2] The Southern Independent School Association intervened as a party-defendant in the action against Bobbe's, asserting that it represents "non-profit, private white schools in seven states and the class of all similarly situated schools and their associated students and parents."

The intervenor takes a different tack from that of the principal defendants.

It concedes that race is a factor in its policies of exclusiveness, but says that 42 U.S.C. § 1981 cannot be used to compel admission of a black child to a white school of the type it represents, and prays an adjudication to that effect.

The actions were consolidated and tried on July 16 and 17, 1973.

 No determination was made prior to trial that the actions might be maintained as a class action, either as asserted by the plaintiff or the intervenor; and the Court does not feel it should be so maintained. Accordingly the decision is only binding on the named plaintiffs, the named defendants, and those schools which actually comprise the intervenor.

42 U.S.C. § 1981 reads as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

 If read literally the act covers these plaintiffs, who have been denied their right to make a contract with the defendants because they are not white. That it is to be read literally is no longer open to question. In considering 42 U.S.C. § 1982, the Supreme Court has said that " . . . Congress meant exactly what it said." Jones v. Mayer Co., 392 U.S. 409, 422, 88 S.Ct. 2186, 2194, 20 L.Ed.2d 1189 (1968). Interrelated as § 1981 and § 1982 are, there is no reason to think Congress meant any less when it enacted § 1981. Tillman v. Wheaton-Haven Recreation Ass'n, 410 U.S. 431, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973). The purpose of both is to prohibit all racial discrimination against

---

2. Originally 42 U.S.C. § 2000a was alleged as a basis for the actions. This was withdrawn prior to trial.

non-whites,[3] whether that infringement be "by 'State or local law,'" or "by 'custom, or prejudice.'" Jones v. Mayer Co., *supra*, at 423 of 392 U.S., at 2194 of 88 S.Ct. In other words, no state action is necessary to invoke § 1981.

■ Although both schools claim to have strictly established criteria for enrollment, the end result of their admission policies as applied to both Colin and Michael evidences no "plan or purpose of exclusiveness" for selection of students "*other than race.*" (Emphasis added.) Sullivan v. Little Hunting Park, 396 U. S. 229, 236, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969). This disposes of the argument that these were "truly private" schools since the opportunity to attend these schools was open to every white child. *Tillman*, at 435 and 439 of 410 U.S., 93 S.Ct. 1090. It is difficult to accept the defendants' argument that the plaintiffs may not have been qualified to meet their schools' high standards. This answer is certainly unavailing with regard to the day camp or nursery and is suspect insofar as the first grade is concerned since Colin Gonzales, because of his race, was never given the opportunity to demonstrate that he was qualified.[4]

Intervenor proffered testimony which would establish:

1. That intervenor parents act rationally in holding a belief that segregation is desirable in education in light of the performance record of these schools and current scientific theory; and

2. That the intervenor schools are academically successful beyond the national public school average and have low disciplinary problems, both of which are causally related to segregated policies.

■ The Court finds this testimony to be irrelevant to the issue in these actions, feeling that such testimony, as a defense to outlawed policies of segregation, embodies a concept rejected in Brown v. Board of Education, *supra*.

Intervenor has seized on certain dicta of the Supreme Court in Norwood v. Harrison, 413 U.S. 455, 93 S.Ct. 2804, 37 L.Ed.2d 723 (1973), which states that "private bias" is not proscribed by the Constitution and that "private discrimination may be characterized as a form of exercising freedom of association protected by the First Amendment . . . ." Comforting as these words may be to the defendants out of context, it must be pointed out that § 1981 was not there involved; that Jones v. Mayer Co. was cited to the contrary as an example of private discrimination made unlawful by Congress; and that the opinion specifically points out that "[t]his case does not raise any question as to the right of citizens to maintain private schools with admission limited to students of particular national origins, race or religion . . . ." Norwood v. Harrison, at 457, 93 S.Ct. at 2807. Moreover, although perhaps not legally significant, as a practical consideration, it is inconceivable that the opinion in the case would have attained the indicated degree of unanimity if it stood for the proposition urged by the intervenor.

---

3. The analogy to all black academies, all Chinese schools, and all rabbinical schools is inapposite. These institutions don't fall within the proscription of § 1981. Whatever else may be said of their policies, those institutions are free to discriminate against whites, or *against other non-whites if whites are similarly discriminated against*, without running afoul of § 1981.

4. The defendant Fairfax-Brewster points to page 2 of its handbook (Def's Ex. 2) to in-

dicate that Colin Gonzales should have submitted a report card and other pertinent records from his previous school, the omission of which was a ground for his rejection. The same page of the handbook provides for Entrance Examination if previous scholastic records are inadequate. Colin was denied the opportunity to take this examination since he was never told that his scholastic record inadequacy was the reason for his rejection.

Accordingly the Court feels *Norwood* is not authority for that proposition.

█ While no relief is sought under 42 U.S.C. § 2000a et seq., it seems appropriate to point out that, in the Court's view, this act is not a limitation on § 1981, and consequently the exemption of 42 U.S.C. § 2000a(e) for private establishments does not apply in this case. Moreover, as indicated before, Sullivan v. Little Hunting Park has abolished traditional notions of what is "private" insofar as these types of actions are concerned.

Plaintiffs are accordingly entitled to the relief requested, namely:

A. An adjudication that the policies with respect to the admission of students to defendants' day camp and school, of discriminating on the basis of race or color, are a violation of 42 U.S.C. § 1981.

B. A permanent injunction against the defendants and intervenor, their agents and those acting in concert with them, prohibiting them from following the policies described in Paragraph A.

█ C. An award of compensatory [5] damages for the embarrassment, humiliation and mental anguish which the Court finds to have been suffered by the plaintiffs as follows:

1. In favor of Colin Gonzales:
 (a) Against Fairfax-Brewster School — $2,000
 (b) Against Bobbe's School — 500
2. In favor of Michael McCrary against Bobbe's School — 1,000
3. In favor of Sandra McCrary and Curtis L. McCrary against Bobbe's School — 2,000

D. An award of attorney's fees as follows:

1. Against Fairfax-Brewster School — $1,000
2. Against Bobbe's School — 1,000

E. Their costs.

And it is so ordered.

5. Punitive damages are not awarded. While the defendants' acts have here been declared improper, insofar as the Court can determine similar acts have not heretofore been so declared. Accordingly the defendants cannot be said to have acted recklessly or wilfully in disregard of clear existing law.