**PRINCE EDWARD SCHOOL FOUNDATION, Plaintiff,**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE, Defendant.**

**Civ. A. No. 78–1103.**

United States District Court, District of Columbia.

April 18, 1979.

George S. Leonard, Alexandria, Va., for plaintiff.

Thomas M. Lawler, Jr., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This is a suit for declaratory judgment pursuant to section 7428 of the Internal Revenue Code as amended by section 1306(a) of the Tax Reform Act of 1976, 90

Stat. 1717.[1] Plaintiff seeks a ruling declaring that it is a tax-exempt organization described in section 501(c)(3) of the Internal Revenue Code of 1954. Defendant, in opposition, asserts that the plaintiff is precluded from qualifying as a charitable organization under section 501(c)(3) because it has not established that it administers a nondiscriminatory admissions policy.[2] This ultimate issue is before us on cross-motions for summary judgment.

*Factual Background*

The pertinent facts are as follows. Plaintiff was formed as a non-profit private school foundation to operate elementary and high schools in Prince Edward County, Virginia. On June 1, 1959, the plaintiff filed its first application with the Internal Revenue Service (hereinafter referred to as the "Service") whereby it sought a ruling from the Service that it was a tax-exempt organization within the terms of section 501(c)(3). By letters of August 6, 1959 and June 10, 1960, the Service tentatively ruled that plaintiff was a tax-exempt organization and qualified for favorable tax treatment. Plaintiff filed a second application for a ruling on its tax-exempt status on August 17, 1960. The Service responded to the plaintiff's application with a letter on December 22, 1961, indicating that no change in plaintiff's tax-exempt status had occurred since the Service's earlier tentative ruling.

In 1970, the Service announced a new policy to be applied when determining the tax-exempt status of private schools. Under such policy, the Service would not recognize the tax-exempt status of a private school unless the school adopted and administered a nondiscriminatory admissions policy and publicized that policy to the community served by the school. *See* Revenue Ruling 71–447, 1972–2 C.B. 230; Revenue Procedure 75–50, 1975–2 C.B. 587. The plaintiff was advised by the Service of its new policy on November 30, 1970. By letter of December 29, 1970, the plaintiff's president responded that the school would continue to have its applications for admission judged by plaintiff's Board of Directors or its agents, and that the plaintiff did not intend to change its existing practices.

On November 3, 1976, after examining plaintiff's information tax return for the fiscal year ending July 31, 1974, a Service revenue agent informed the plaintiff that he *intended to recommend* revocation of the Service's prior tax-exempt rulings. Plaintiff was told that it had not affirmatively

1. Jurisdiction for this suit derives from section 7428 of the Internal Revenue Code and section 1507 of Title 28, United States Code. Those sections provide in pertinent part as follows:
26 U.S.C. § 7428:
(a) Creation of remedy.—In a case of actual controversy involving (1) a determination by the Secretary—
(A) with respect to the initial qualification or continuing qualification of an organization as an organization described in section 501(c)(3) which is exempt from tax under section 501(a) or as an organization described in section 170(c)(2), . .

Upon the filing of an appropriate pleading, the United States Tax Court, the United States Court of Claims, or the district court of the United States for the District of Columbia may make a declaration with respect to such initial qualification or continuing qualification or with respect to such initial classification or continuing classification. Any such declaration shall have the force and effect of a decision of the Tax Court or a final judgment or decree of the district court or

the Court of Claims, as the case may be, and shall be reviewable as such. . . .
28 U.S.C. § 1507:
The Court of Claims shall have jurisdiction to hear any suit for and issue a declaratory judgment under section 7428 of the Internal Revenue Code of 1954.

2. Internal Revenue Code § 501, 26 U.S.C. § 501:
(c) List of exempt organizations. . . .
(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

shown that its school had adopted a racially nondiscriminatory admissions policy, nor had it publicly avowed such a policy. After receiving a second response from the plaintiff informing the Service that it would not change its admission's policy, the Service's agent *proposed* revocation of plaintiff's tax-exempt status. On August 2, 1978, after exhausting its administrative remedies, plaintiff received a final adverse determination letter from the Service, formally revoking plaintiff's tax exemption.

In support of its motion for summary judgment, the defendant contends that the only issue presented for resolution by plaintiff's complaint is whether the Service properly concluded that plaintiff is an organization qualifying for tax-exempt status within the meaning of section 501(c)(3). Relying on its contention that schools with discriminatory admissions policies are excluded from those organizations described in section 501(c)(3), the defendant argues that it properly revoked the plaintiff's tax-exempt status because of the plaintiff's failure to affirmatively establish or publicly avow that its admissions policy is nondiscriminatory.

Plaintiff, on the other hand, seeks to challenge the Service's constitutional and statutory authority for revoking plaintiff's tax-exempt status. Specifically, plaintiff contends the Revenue Procedure 75–50, which requires an organization to publicize its policy of nondiscrimination in order to retain its tax exemption, violates the First and Fifth Amendments to the Constitution, as well as the mandates of the Administrative Procedure Act, the Internal Revenue Code of 1954, and the Service's own regulations. In addition, plaintiff argues that the Service has exceeded its authority by attempting to revoke plaintiff's tax exemption retroactively from November 30, 1970.

Before addressing these issues, a brief discussion of the jurisdictional basis for this suit and of our scope of review is appropriate.

### Section 7428 Proceedings

Section 7428 of the Internal Revenue Code was enacted to provide a remedy for resolving disputes concerning the initial or continuing qualification by the Secretary of the Treasury of an organization as a tax-exempt organization described in section 501(c)(3) of the Code. The enactment of Section 7428 was Congress' response to two Supreme Court decisions denying equitable injunctive relief to organizations seeking to restrain the IRS from withdrawing favorable tax-exempt ruling letters. H.Rep.No. 94–658, 94th Cong., 1st Sess. 282 (1976); S.Rep.No. 94–938, 94th Cong., 2d Sess. 585 (1976), U.S.Code Cong. & Admin.News 1976, p. 2897; *see Bob Jones University v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974); *Alexander v. "Americans United," Inc.,* 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974). The Senate Committee reporting the bill that eventually emerged as section 7428 noted that, although the tax status of an organization is defined by statute and does not depend on the position of the IRS, most organizations find it imperative to obtain a ruling letter from the Service to assure its potential donors that their contributions to the organization will be deductible. S.Rep.No. 94–938, at 585. Noting that the degree of bureaucratic control over an organization's tax-exempt status was susceptible to abuse without review, the Senate Committee recommended the declaratory judgment procedure as a means of enabling an organization to obtain a judicial determination of its own tax-exempt status. *Id.* at 586–91.

While providing a remedy to organizations for contesting the Service's tax-exempt status classifications, Congress apparently contemplated that the judicial proceedings would be limited to a judicial review of the Service's ruling for error primarily based upon the administrative record and evidence presented by the organization to the Service. *Id.* at 588.

 Our jurisdiction therefore is limited to a review for error of the Service's revocation of plaintiff's favorable tax-exempt ruling. The burden of establishing whether plaintiff is an organization described in section 501(c)(3), furthermore, rests

with the plaintiff. *Animal Protection Institute v. United States*, 42 A.F.T.R.2d 78–5850 (Ct.Cl.Tr.J.Op., Sept. 19, 1978). With these principles in mind, we turn to the arguments presented by the parties.

*Private Schools Administering Racially Discriminatory Admissions Policies Are Excluded From Organizations Described in Section 501(c)(3)*

■ In determining whether plaintiff qualifies for favorable tax treatment, our initial inquiry is whether Congress intended to exclude from section 501(c)(3) those private schools that maintain discriminatory admissions policies. In *Green v. Connally*, 330 F.Supp. 1150 (D.D.C.1971), *aff'd per curiam sub nom., Coit v. Green*, 404 U.S. 997, 92 S.Ct. 564, 30 L.Ed.2d 550 (1971), a three-judge panel of this Court ruled that racially discriminatory private schools are not entitled to the favorable tax treatment provided organizations in section 501(c)(3). There, we explained at great length the reasons underlying our decision. We stated that, although no specific language in the statute excludes such organizations, their eligibility for tax-exempt status may be determined by reference to the federal policy underlying federally bestowed tax advantages to educational charities. *Id.* at 1161. After examining federal policy favoring racial desegregation, we concluded that it would be anomalous to permit tax benefits to schools whose practices violate this clearly established policy. *Id.* at 1163. We suggested that federal policy expressed in the Constitution, statutes and court decisions would be otherwise undermined by the legislative grant of tax benefits conferred by section 501(c)(3). *Id.* at 1163–64. It logically follows from our conclusions in *Green* that schools administering a discriminatory admissions policy must be excluded from those organizations described in section 501(c)(3). *Green* is dispositive of the substantive issue underlying this case. In addition to plaintiff's contention that it is entitled as an organization administering a nondiscriminatory admissions policy and therefore entitled to tax-exempt treatment, plaintiff has raised several allegations con-

testing the validity of the defendant's procedures for determining whether a private school is deserving of the tax-exempt status. Those procedures are set forth in Revenue Procedure 75–50, 1975–2 C.B. 587.

*Revenue Procedure 75–50*

■ Revenue Procedure 75–50 requires that a private school seeking tax-exempt status adopt, administer, and publicize its racially nondiscriminatory admissions policy. Plaintiff complains that this requirement that it publicize a nondiscriminatory admissions policy violates its First Amendment right to due process, as well as the statutory mandates of the Administrative Procedure Act and the Internal Revenue Code. These contentions are without merit and immaterial to our determination of plaintiff's tax-exempt status under section 501(c)(3).

The Service, in determining whether to grant or revoke a favorable tax-exempt ruling, has developed guidelines and procedures for organizations to follow in demonstrating that they are organizations described in section 501(c)(3). Revenue Procedure 75–50 is one such guideline and sets forth requirements for private schools to follow in demonstrating that their admissions policies are nondiscriminatory. The revenue procedure, however, does not purport to set forth requirements for exemption under section 501(c)(3). Rather, it acts to put schools on notice that, if they choose not to publicly avow a nondiscriminatory admissions policy or to demonstrate that they have such a policy, the agency may deny them tax-exempt status in a section 7428 proceeding.

Plaintiff's memorandum in support of its motion for summary judgment is devoted in large part to a challenge of the validity of Revenue Procedure 75–50. Even if presented with an invalid revenue procedure, however, the decision for resolution by this court remains whether the plaintiff is a tax-exempt organization under section 501(c)(3). Our ruling upon the constitutionality and statutory validity of Revenue Pro-

cedure 75–50 will not affect our ultimate resolution of that question. Revenue Procedure 75–50 simply presents a "litigating position" for the Service and does not bear upon our interpretation of section 501(c)(3)'s prerequisites and plaintiff's failure to meet these requirements. In the context of this case, plaintiff's constitutional claims are not material.[3]

### Plaintiff's Qualification as a Tax-Exempt Organization

■ Upon examination of the administrative record in this proceeding, we conclude that plaintiff has failed to meet its burden of establishing its entitlement to Section 501(c) tax-exempt status. The record is completely devoid of evidence that plaintiff is administering a nondiscriminatory admissions policy. Indeed, all that the plaintiff has alleged with regard to its admissions policy is that its policy is not formalized (Def's Ex. 34) and that decisions on admissions are wholly within the discretion of its Board of Directors (Def's Exs. 8, 34).

Plaintiff concedes that no factual issues remain in dispute regarding their admissions policy. (Def's Ex. 3). It is accordingly undisputed that the plaintiff has never admitted, never received an application from, and thus has never denied admission to a black person. Notwithstanding the absence of direct evidence in either party's favor, it remains the plaintiff's burden to establish that its policy is to admit black students on the same basis as those of other races. The plaintiff has failed to present any evidence to that effect. On the other hand, the inference that plaintiff in fact administers a racially discriminatory policy may be drawn from the circumstances surrounding the school's establishment. The Supreme Court, specifically referring to the plaintiff, described the purpose for plaintiff's establishment to be "to ensure, through measures taken by the county and the State, that white and colored children in Prince Edward County would not, under any circumstances, go to the same school." *Griffin v. School Board of Prince Edward County*, 377 U.S. 218, 231, 233, 84 S.Ct. 1226, 1233, 1234, 12 L.Ed.2d 256 (1964). A further inference that plaintiff administers a racially discriminatory admissions policy can be drawn from the fact that plaintiff has previously conceded that it practiced a racially discriminatory policy of exclusiveness, was subsequently enjoined from such practices by court order, but has failed to present any evidence that it has since modified that policy. *See McCrary v. Runyon*, 363 F.Supp. 1200, 1204 (E.D.Va.1973), aff'd, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976).

■ Plaintiff argues that, because it is subject to the injunction issued in *McCrary v. Runyon, supra,* we should conclude that its admissions policy is nondiscriminatory. We find no reason to draw such a conclusion from the plaintiff's participation in *McCrary.* On the contrary, it would appear incumbent upon the plaintiff, given its concessions that its policies were at one time discriminatory, to establish that it has subsequently reversed that policy.

■ Plaintiff further contends that the issue of plaintiff's entitlement to tax-exempt status was previously decided in *Griffin v. Board of Supervisors of Prince Edward County*, 322 F.2d 332 (4th Cir. 1963), rev'd on other grounds, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964). Plaintiff argues that defendant is now estopped from collaterally relitigating the issue in this proceeding. In *Griffin*, relief was sought that would forbid, inter alia, the allowance of local tax credits to taxpayers for contributions to schools practicing segregation. *Id.* at 334. The United States appeared only in an amicus capacity in order to support the complaint to the extent that it charged Virginia and Prince Edward County supervisors with racial discriminatory practices.

---

**3.** We reject plaintiff's contention that Revenue Procedure 75–50 is invalid and in contravention of the First Amendment, the Due Process Clause, the APA, and the Service's own regulation, 26 C.F.R. § 601.201(n)(6)(ii). We also reject as immaterial plaintiff's argument that Revenue Procedure 75–50 is void because its purpose is political rather than revenue producing or because it is not authorized by any section of the Code.

The Prince Edward School Foundation was not even party to that suit. Furthermore, the *Griffin* court never decided the issue now before this court. In *Griffin*, the complaint contested an ordinance adopted by the Prince Edward County Board of Supervisors, not a federal tax-exempt ruling. The ordinance provided credits for taxpayers who contribute to the Prince Edward School Foundation. *Id.* at 399. There, the ordinance was challenged as an indirect method of channeling funds to a segregated school system. *Id.* The court in *Griffin* abstained from deciding whether these tax credits were violative of the Fourteenth Amendment and deferred to the state the resolution of questions concerning the extent to which these and other practices of the state and county amounted to "state action." *Id.* at 340. Clearly the *Griffin* decision, which involved different issues between different parties, has no collateral estoppel effect upon our conclusion that plaintiff's federal tax exemption was properly revoked by the Service.

### Retroactive Revocation of Plaintiff's Tax Exemption

█ Finally, plaintiff alleges that revocation of its tax-exempt status as of November 30, 1970, violates the service's procedural rule governing retroactive revocation of tax exemption rulings. That rule provides that revocation may be retroactive if the organization "omitted or misstated a material fact, operated in a manner materially different from that originally represented, or engaged in a prohibited transaction." 26 C.F.R. § 601.201(n)(6)(1) (1978). Defendant, on the other hand, contends that the revocation sought in this case is in accordance with the procedural rules governing the timing of revocations in general. That rule provides that "in any event, revocation or modification will ordinarily take effect no later than the time at which the organization received written notice that its exemption ruling or determination letter might be revoked or modified." *Id.*

We agree with defendant's contention that revocation as of November 30, 1970, is consistent with this statement of the Service's procedural rules. By letter of November 30, 1970, the Service informed the plaintiff of its change in policy toward schools with racially discriminatory admissions policies. That letter advised the plaintiff that the Service would continue to recognize its tax-exempt status if it adopted or would adopt and administer a nondiscriminatory admissions policy, and if that policy were publicized within the community. It further informed plaintiff that the Service was in the process of reviewing all prior rulings issued to private schools and invited the plaintiff to answer specific questions regarding its own admissions policy. In its response of December 29, 1970, plaintiff declined to answer the questions posed by the Service and stated that it did not intend to change or modify its policies. We are persuaded that plaintiff was placed on notice by the letter of November 30, 1970, that its tax-exempt ruling letter might be revoked or modified.

### Conclusion

For the above reasons, we conclude that plaintiff has failed to meet its burden of establishing that it is an organization described in section 501(c)(3) and entitled to tax-exempt treatment. We further conclude that the Service acted properly in revoking plaintiff's exempt status ruling as of November 30, 1970. Accordingly, plaintiff's request for declaratory relief is denied.