No. 80–484. PRINCE EDWARD SCHOOL FOUNDATION *v.* UNITED STATES. C. A. D. C. Cir. Certiorari denied.

JUSTICE REHNQUIST, with whom JUSTICE STEWART and JUSTICE POWELL join, dissenting.

The initial question presented by this petition is whether the Internal Revenue Service is entitled to deny tax-exempt status to a private school which discriminates in its admissions policy. If so, the additional question posed is what steps a private school must take in order to establish that its admissions policy is in fact nondiscriminatory.

Petitioner, Prince Edward School Foundation, was formed as a nonprofit private school foundation to operate elementary and secondary schools in Prince Edward County, Va. The principal purpose for petitioner's establishment was to ensure a segregated education for the white children who attended petitioner's schools. *Griffin* v. *School Board of Prince Edward*

*County,* 377 U. S. 218, 223, 231 (1964). Presently, petitioner's sole activity is the operation of one private school, Prince Edward Academy.

From 1959 until 1970, petitioner was considered by the Service as a tax-exempt organization within the terms of § 501 (c)(3) of the Internal Revenue Code of 1954, 26 U. S. C. § 501 (c)(3). Section 501 (a) of the Code exempts from the federal income taxes organizations described in § 501 (c)(3), and this latter provision includes corporations or foundations "organized and operated exclusively for religious, charitable, scientific, . . . literary, or educational purposes . . . ."

In 1970, the Service announced that it would no longer recognize the tax-exempt status of any private school unless the school adopted and administered a nondiscriminatory admissions policy. This new position was announced during the course of litigation in *Green* v. *Connally,* 330 F. Supp. 1150 (DC 1971), in which the Service's prior policy was being challenged. A three-judge panel in *Green* thereafter ruled that a private school is not entitled to acquire or retain exempt status under § 501 (c)(3) unless it has a racially nondiscriminatory admissions policy. Although § 501 (c)(3) does not, by its express terms, impose such a limitation on the right to tax-exempt status, the *Green* court reasoned that such a limitation was mandated by both public policy and the common-law definition of "charitable." [1]

To effectuate its new policy regarding tax exemptions for private schools, the Service issued Revenue Procedure 72–54 (currently Rev. Proc. 75–50, 1975–2 Cum. Bull. 587), which requires a private school seeking tax-exempt status to publicize its nondiscriminatory admissions policy to all segments

---

[1] This Court summarily affirmed the District Court's decision, *sub nom. Coit* v. *Green,* 404 U. S. 997 (1971), but we later explained in *Bob Jones University* v. *Simon,* 416 U. S. 725, 740, n. 11 (1974), that this affirmance lacks precedential weight because no controversy remained in *Green* by the time the case reached this Court.

of the community either through a newspaper of general circulation or over the broadcast media.

Petitioner has continuously refused to publicize that its school has a racially nondiscriminatory admissions policy, although it has steadfastly contended that in fact this is the case. (App. to Pet. for Cert. 49a.) In 1978, the Service revoked petitioner's exempt status because it "[had] not complied with the requirements of Revenue Procedure 75–50 nor any of its guidelines that preceded it and [has] not demonstrated that [it has] adopted a racially nondiscriminatory policy as to students . . . ." (*Id.,* at 18a.)

Thereafter, petitioner brought this action under 26 U. S. C. § 7428 to review the Service's determination regarding its tax-exempt status, attacking both the statutory and constitutional validity of Rev. Proc. 75–50. Petitioner filed affidavits in the District Court asserting that it has an open admissions policy and, although no black student has ever attended its school, no black student has ever applied for admission and no official of or personnel related to the petitioner has ever done or said anything to discourage such application. (App. to Pet. for Cert. 49a.) Petitioner also argued to the District Court that since 1973 it has been subject to an injunction entered by another District Court requiring it to admit any qualified black applicants. *McCrary* v. *Runyon,* 363 F. Supp. 1200 (ED Va. 1973), aff'd, 427 U. S. 160 (1976). No contention has been made that petitioner is in violation of that injunction order.

On cross-motions for summary judgment, the District Court upheld the Service's determination. The District Court concluded:

"It is accordingly undisputed that the plaintiff has never admitted, never received an application from, and thus has never denied admission to a black person. Notwithstanding the absence of direct evidence in either party's favor, it remains the plaintiff's burden to establish that

its policy is to admit black students on the same basis
as those of other races. The plaintiff has failed to present
any evidence to that effect. On the other hand, the
inference that plaintiff in fact administers a racially dis-
criminatory policy may be drawn from the circumstances
surrounding the school's establishment. . . . A further
inference that plaintiff administers a racially discrimina-
tory admissions policy can be drawn from the fact that
plaintiff has previously conceded that it practiced a ra-
cially discriminatory policy of exclusiveness, was subse-
quently enjoined from such practices by court order, but
has failed to present any evidence that it has since modi-
fied that policy." [2]

The questions presented by this petition are of widespread
importance. The validity of the Service's policy of denying
tax-exempt status to private schools which have a racially
discriminatory admissions policy is not apparent from a read-
ing of the relevant provisions of the 1954 Code. Section 501
(c)(3) speaks to a number of different types of organizations
which are entitled to tax-exempt treatment. Separate refer-
ences are made to "educational" and "charitable" organiza-
tions. Arguably, these separate references reflect Congress'
intent that not all educational institutions must also be
charitable institutions (as that term was used in the common
law) in order to receive tax-exempt status. Moreover, for
statutory interpretation purposes, it is difficult to distinguish
between private schools which discriminate on the basis of
race, private "religious" schools which discriminate on the
basis of religion, and private "religious" schools which dis-

---

[2] The District Court did not address petitioner's statutory and con-
stitutional challenges to Rev. Proc. 75–50. The court reasoned that a
ruling on the validity of this Revenue Procedure would not affect the
ultimate question of whether petitioner was in fact administering a non-
discriminatory admissions policy. The opinion of the District Court was
affirmed in a *per curiam* order by the Court of Appeals.

criminate on the basis of race but claim that separation of
the races is one of the tenets of their religion. Certainly, the
Service has never proffered any persuasive reason why these
situations should be treated dissimilarly.

Given the general rule that words of a statute, including
the Revenue Acts, should be interpreted where possible in their
ordinary, everyday sense, *Malat* v. *Riddell*, 383 U. S. 569,
571 (1966); *Hanover Bank* v. *Commissioner*, 369 U. S. 672,
687 (1962), the authority of the Secretary of the Treasury
to promulgate this policy regarding the tax status of private
schools is sufficiently questionable to merit review by this
Court. Perhaps, implementation by the Service of the ex-
press language of the statute will, as suggested by the District
Court in *Green* v. *Connally, supra,* create problems of a con-
stitutional nature. That, however, is a question that this
Court, as opposed to the Service, is better equipped to address.

Assuming, *arguendo,* the validity of the Service's policy
pertaining to private schools, the determination made by the
District Court that petitioner does not qualify for tax-exempt
treatment is questionable on the record before us. Petitioner
was, and still is, under a court order not to discriminate in
its admissions. No contempt proceedings have been initiated
against the petitioner for violation of that order. Moreover,
the District Court had before it sworn affidavits that peti-
tioner has an open admissions policy. Admittedly, petitioner
refused to advertise this open admissions policy, but the
Service's requirement of such is one step further removed from
the express language of the statute and therefore of even more
questionable statutory and constitutional validity.

Not surprisingly, petitioner has not had the opportunity to
demonstrate the sincerity of its open admissions practice.
Petitioner has retained, and in fact teaches, its belief that
racial segregation is desirable. The Court, however, has up-
held the First Amendment right of parents to send their
children to educational institutions such as petitioner's, al-
though we have condemned as unlawful the *practice* of deny-

ing admission to such institutions on account of race. *Mc-Crary* v. *Runyon*, 427 U. S. 160, 176 (1976). It is easy to understand why any black parents would not seek their child's admission to an "educational" institution which seeks to inculcate the merits of segregation in the value system of its students. It is not at all unlikely that petitioner will never receive an application for the admission of a black child. This, however, is of no relevance to the narrow question of whether a black child, if he desired to attend petitioner's institution, would in fact be granted admission on the same basis as a white child. The Service presented no evidence to rebut the evidence brought forth by the petitioner that this would be the case.

Because I believe the time has come for this Court to deal with the difficult statutory and constitutional questions raised in this petition, I dissent from the denial of the petition for a writ of certiorari.