VIRGINIA EDUCATION FUND, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2960–79X.     Filed November 12, 1985.

*John W. Pearsall*, for the petitioner.
*Michael F. Patton*, for the respondent.

## OPINION

COHEN, *Judge*: Respondent revoked a ruling classifying petitioner as an organization exempt from Federal income tax under section 501(c)(3).[1] Petitioner challenges respondent's determination and has invoked the jurisdiction of this Court for a declaratory judgment pursuant to section 7428. The issues for decision are the apportionment of the burden of

---

[1] Unless otherwise indicated all section references are to the Internal Revenue Code of 1954, as amended.

proof between the parties and the validity of respondent's making the revocation retroactive to 1974.

Petitioner was organized in Virginia on May 8, 1958, as a nonstock membership corporation for charitable, educational, and literary purposes, under the name of Defenders Welfare and Educational Foundation. Petitioner solicits funds from private sources and distributes those funds to private schools (the donee schools). It does not operate any schools.

## Chronology

Soon after its organization, petitioner applied for an exemption from Federal income tax as an organization described in section 501(c)(3). In the application petitioner stated that it was formed "To assist local organizations in Virginia in the operation of private schools in those localities where public schools are closed." On April 7, 1961, the Internal Revenue Service (Service) National Office issued a ruling classifying petitioner as a 501(c)(3) organization.

On July 10, 1970, the Service publicly announced, in a reversal of its previously published position, that it would deny tax-exempt status to racially discriminatory private schools. This post-1970 position is embodied in Rev. Rul. 71–447, 1971–2, C.B. 230, 231, which provides, in relevant part:

a school not having a racially nondiscriminatory policy as to students is not "charitable" within the common law concepts reflected in sections 170 and 501(c)(3) of the Code and in other relevant Federal statutes and accordingly does not qualify as an organization exempt from Federal income tax.

Rev. Rul. 71–447, 1971–2 C.B. at 230, defines a "racially nondiscriminatory policy as to students" as meaning:

that the school admits the students of any race to all the rights, privileges, programs, and activities generally accorded or made available to students at that school and that the school does not discriminate on the basis of race in administration of its educational policies, admissions policies, scholarship and loan programs, and athletic and other school-administered programs.

On January 11, 1972, the Service District Director sent petitioner a letter proposing an adjustment in petitioner's tax-exempt status. The revenue agent's examination report, which accompanied the letter, recommended the revocation of peti-

tioner's exempt status effective December 31, 1968. The stated reason for the recommendation was as follows:

more than 50% of the funds disbursed in 1969 was disbursed to organizations which had not established exempt status, and the Virginia Education Fund has been unable to establish that these are organizations described in section 501(c)(3) of the Code, and in addition no adequate controls were maintained to insure that the funds disbursed were used for purposes described in section 501(c)(3) of the Code * * *

On April 20, 1973, the District Director, at petitioner's request, sent petitioner a copy of a technical advice memorandum from the National Office dated March 14, 1973, which analyzed the proposed revocation of petitioner's exempt status. The memorandum stated, in relevant part:

The file indicates that the Fund is supporting segregated schools. * * *

\*　　\*　　\*　　\*　　\*　　\*　　\*

In a News Release, dated July 10, 1970, the Internal Revenue Service announced that it could no longer legally justify allowing tax-exempt status to private schools that practice racial discrimination nor could it treat gifts to such schools as charitable deductions for income tax purposes. The action of the Service on July 10, 1970, marked a decision that the changes in the public policy of the United States could no longer be disregarded as a disqualifying factor with respect to the charitable status of the institutions involved. This position is reflected in Revenue Ruling 71–447.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Since the Internal Revenue Service did not determine until July 10, 1970, that it could no longer legally justify recognizing the tax exempt status of schools with racially discriminatory admissions policies, the Fund is not required to show that the schools receiving funds during the year 1969 had racially nondiscriminatory admissions policies. Therefore, the Fund qualifies for recognition of exemption under section 501(c)(3) of the Code for the year 1969.

On November 11, 1976, the District Director sent petitioner a letter proposing an adjustment to petitioner's exempt status. The accompanying examination report of the revenue agent stated, in relevant part:

You have supported organizations that have not adopted racially nondiscriminatory policies as to students and the exempt status of the organizations has been revoked in accordance with the provisions of Revenue Ruling 71–447. You are not regarded as operated exclusively for exempt purposes as

provided in Regulations 1.501(c)(3)–1(c). It is recommended that your exempt status be revoked with retroactive effect to the calendar year 1974.

On May 24, 1977, the District Director issued petitioner a determination letter revoking the Service's April 7, 1961, ruling that petitioner was exempt from tax. The determination letter stated, in relevant part:

During the year 1974 you received contributions in the total amount of $107,733 and you distributed $93,668 to seven different schools which failed to qualify for exemption from Federal income tax because they declined to adopt racially nondiscriminatory admission policies. Information indicates that 79 percent of your contributions for the year 1975 were made to the same schools and they received 75 percent of the total contributions you made during the period January 2 to May 18, 1976. Advance assurance of the deductibility of contributions to the schools was suspended for gifts made after January 14, 1974 as announced in Revenue Announcement 74–1.

\* \* \* \* \* \* \*

Regulations 1.501(c)(3)–1(c) provide that "an organization will be regarded as 'operated exclusively' for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose."

In view of the foregoing, it is the determination of this office that you are not exempt from Federal income tax because you are not operated exclusively for exempt purposes specified in section 501(c)(3) of the Internal Revenue Code. Accordingly, our ruling dated April 7, 1961 is hereby revoked with retroactive effect to the year ended December 31, 1974.

On December 22, 1978, the Service reissued the May 24, 1977, determination letter so that petitioner might take advantage of the declaratory judgment procedure prescribed in section 7428.[2] The December 22, 1978, letter stated, in relevant part:

During 1974, a substantial portion of your contributions were [sic] distributed to schools which failed to qualify for exemption from Federal income tax because they did not adopt a racially nondiscriminatory admissions policy in accordance with Revenue Ruling 71–447 and subsequent revenue procedures.

\* \* \* \* \* \* \*

---

[2]Codified by sec. 1306 of the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1525, 1717–1720, sec. 7428 applies to Service determinations made after Jan. 1, 1976.

Section 1.501(c)(3)–1(c) of the Income Tax Regulations provides that "an organization will be regarded as 'operated exclusively' for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in Section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose."

In view of the foregoing, it is the determination of this office that you are not exempt from Federal income tax because you are not operated exclusively for exempt purposes specified in Section 501(c)(3) of the Internal Revenue Code. Accordingly, our ruling dated April 7, 1961 is hereby revoked with retroactive effect to the year ended December 31, 1974.

Having satisfied all jurisdictional prerequisites, on March 12, 1979, petitioner filed its petition for a declaratory judgment requesting that the Court affirm its tax-exempt status under section 501(c)(3).

On September 14, 1981, petitioner filed a motion for summary judgment. In a memorandum supporting the motion, petitioner alleged that the only ground for revoking petitioner's tax-exempt status stated in the December 22, 1978, determination letter was that the donee schools "did not adopt a racially nondiscriminatory admissions policy in accordance with Revenue Ruling 71–447 and subsequent revenue procedures." Those "subsequent revenue procedures" were identified in the memorandum as Rev. Proc. 72–54, 1972–2 C.B. 834, and Rev. Proc. 75–50, 1975–2 C.B. 587 (superseding Rev. Proc. 72–54), which set forth,

guidelines and recordkeeping requirements for determining whether private schools that are applying for recognition of exemption from Federal income tax under section 501(c)(3) of the Internal Revenue Code of 1954, or are presently recognized as exempt from tax, have racially nondiscriminatory policies as to students. [Rev. Proc. 75–50, 1975–2 C.B. at 587.]

Petitioner argued that failure to comply with the guidelines in the revenue procedures was not determinative of an organization's exempt status and that under Rule 217(c)[3] respondent bore the burden of proving petitioner's nonexempt status based upon any grounds other than the donee schools' noncompliance with the revenue procedures. Petitioner concluded that summary judgment in its favor was appropriate because respondent had not investigated any of the donee schools to

---

[3]Unless otherwise indicated any references to Rules shall be deemed to refer to the Tax Court Rules of Practice and Procedure.

determine whether they had actually adopted racially nondiscriminatory policies.

By order dated January 4, 1982, the Court denied petitioner's motion for summary judgment. We reasoned as follows:

Petitioner's position is that the determination of revocation is premised solely on its donee schools' failure to follow the affirmative action publicity guidelines of the revenue procedures. It admits that the donee schools have not taken the necessary steps regarding publicity and it urges that consequently there is no genuine issue as to any material fact. However, the revenue ruling and the revenue procedure go deeper. Basically, what is required is the adoption of a racially nondiscriminatory policy and actual operation in accordance with such a policy.

Respondent has been candid in admitting that he has not investigated any of the donee schools to determine whether, in fact, they have adopted racially nondiscriminatory policies, and are operating in accordance with such policies if, in fact, they have been adopted. Respondent's position is that he need not have done so. It is believed that respondent's position is a sound one. There is a positive indication in the administrative record that petitioner was "set up simply to act as a receptacle for contributions from any source interested in preserving segregated schools, and passing on those contributions to the various organizations actively operating such schools in those localities faced with court orders to integrate the public schools." (Exhibit N) Moreover, the pleadings and admissions establish that petitioner's donee schools were part of a group of intervenors in the case of *Gonzales v. Fairfax-Brewster School, Inc.*, 363 F. Supp. 1200 (E.D. Va. 1973), affirmed sub nom. *McCrary v. Runyon*, 515 F.2d 1082 (4th Cir. 1975), affirmed 427 U.S. 160 (1976). The trial court enjoined the defendants and the intervenors from following a policy with respect to the admission of students of discriminating on the basis of race or color, which action was affirmed by both the Court of Appeals and the Supreme Court. Given the stated purpose for petitioner's formation and its donee schools' involvement in the cited case, it must be found that the respondent was prima facie correct in his determination of revocation of petitioner's exempt status. *The burden is upon petitioner to establish that its donee schools have adopted racially nondiscriminatory policies and are operating in good faith in accordance with such policies.* Discharge of that burden entails obvious genuine issues of material facts.

In this revocation action, as distinguished from most other declaratory judgment actions in this Court, the Court's decision must be based upon a trial on the merits as is true in the ordinary deficiency case, and not solely upon the materials contained in the administrative record. Rule 217(a). It goes without saying that denial of petitioner's motion for summary judgment is in no way a conclusion that the petitioner's exemption has been properly revoked. Petitioner will have full and ample opportunity to establish, as it must, that its donee schools have "cleaned up their acts," so to speak.

[Emphasis supplied.]

On January 24, 1985, the Court ordered the parties to appear at a hearing in Washington, D.C., to discuss the procedure for a trial or other evidentiary proceeding in this case. At that hearing, petitioner's counsel stated that petitioner did not wish to present any evidence and that the Court should enter a decision as a matter of law based upon "Respondent's December 22, 1978 letter of revocation * * * [and] the various pleadings filed in this Tax Court proceeding, not treating the administrative record as a pleading."[4]

## Burden of Proof

In *Bob Jones University v. United States*, 461 U.S. 574 (1983), the Supreme Court adopted the rationale of Rev. Rul. 71–477 and held that racially discriminatory private schools do not qualify for exemption under section 501(c)(3). See also *Green v. Connally*, 330 F. Supp. 1150 (D.D.C. 1971), affd. per curiam sub nom. *Coit v. Green*, 404 U.S. 997 (1971). Moreover, petitioner does not deny that its exempt status depends upon the donee schools' entitlement to exempt status. There is no evidence that the donee schools maintained nondiscriminatory policies and hence were tax exempt under section 501(c)(3). Thus the issues before us are purely procedural.

The first issue is identical to that raised by petitioner in the earlier motion for summary judgment, i.e., whether respondent bears the burden of proving the discriminatory character of the donee schools because the only ground for revocation stated in the December 22, 1978, determination letter was the failure of the schools to comply with the guidelines of the revenue procedures.

We disposed of this issue in our Memorandum Sur Order explaining our reasons for denying petitioner's motion for summary judgment. Petitioner has acknowledged that the prior order is the law of this case unless modified by us. We are not persuaded that our prior order was wrong.

Section 7428 grants this Court nonexclusive jurisdiction to issue a declaratory judgment regarding the initial or continuing qualification of an organization under section 501(c)(3). Although section 7428 does not prescribe rules governing the

---

[4]Petitioner refused to join respondent in filing the administrative record herein. Respondent therefore unilaterally certified and filed the entire administrative record. See Rule 217(b)(1).

burden of proof in such proceedings, Congress intended that the courts develop such rules conforming, insofar as practical, to this Court's rules relating to burden of proof in retirement plan actions under section 7476. See H. Rept. 94–658 (1975), 1976–3 C.B. (Vol. 2) 695, 977–978; Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976 (1976), 1976–3 C.B. (Vol. 2) 1, 415. Promulgated under this congressional directive, Rule 217(c) provides, in relevant part:

(c) Burden of Proof: The burden of proof in declaratory judgment actions shall be as follows:

\*       \*       \*       \*       \*       \*       \*

(2) *Other Actions*: (i) *Petitioner*: The burden of proof shall be upon the petitioner as to jurisdictional requirements and as to the grounds set forth in the notice of determination. \* \* \*

(ii) *Respondent*: The burden of proof shall be upon the respondent as to any ground upon which he relies and which is not stated in the notice of determination. \* \* \*[5]

We thus must carefully scrutinize the language of respondent's determination letter to determine the specific issues raised therein (*Goodspeed Scholarship Fund v. Commissioner*, 70 T.C. 515 (1978)) and place the burden of proof upon respondent with respect to any grounds for denial of exemption not raised in the determination letter. See, e.g., *Dumaine Farms v. Commissioner*, 73 T.C. 650, 659–660 (1980); *Peoples Translation Service v. Commissioner*, 72 T.C. 42, 51–52 (1979); cf. *Ralph Gano Miller Corp. v. Commissioner*, 76 T.C. 433, 436 (1981) (new ground in proceeding under section 7476).

The present case does not involve such a "new ground," however. Petitioner's failure to satisfy the operational test of section 1.501(c)(3)–1(c), Income Tax Regs., due to the discriminatory character of the donee schools was the ground raised in the December 22, 1978, determination letter and is the only ground in issue herein. Respondent does not challenge any other aspect of petitioner's organization or operation. Cf. *Dumaine Farms v. Commissioner, supra; Peoples Translation Service v. Commissioner, supra.*

---

[5] Rules 210 through 218 (Title XXI) prescribe special provisions applying to the various declaratory judgment actions over which this Court has jurisdiction.

Petitioner apparently interprets respondent's final determination letter as relying upon the revenue procedures as the sole legal authority for the nonexempt status of the donee schools. Such an interpretation would indeed be anomalous, because the procedures are merely guidelines representing the position of the Service and not substantive law. See *Prince Edward Sch. Foundation v. United States*, 478 F. Supp. 107, 112 (D.D.C. 1979), affd. without published opinion (D.C. Cir., July 23, 1980), cert. denied 450 U.S. 944 (1981); cf. *Pitcher v. Commissioner*, 84 T.C. 85, 93 (1985).

In cases involving the analogous question of what constitutes a "new matter" not raised in respondent's notice of deficiency for the purpose of Rule 142(a), we have articulated the following test:

The assertion of a new theory which merely clarifies or develops the original determination without being inconsistent or increasing the amount of the deficiency is not a new matter requiring the shifting of the burden of proof. *Estate of Jayne v. Commissioner*, 61 T.C. 744, 748–749 (1974); *McSpadden v. Commissioner*, 50 T.C. 478, 492–493 (1968); *Estate of Sharf v. Commissioner*, 38 T.C. 15, 27–28 (1962). However, if the assertion in the amended answer either alters the original deficiency or requires the presentation of different evidence, then respondent has introduced a new matter. *Estate of Falese v. Commissioner*, 58 T.C. 895, 898–899 (1972); *McSpadden v. Commissioner, supra; Papineau v. Commissioner*, 28 T.C. 54, 57 (1957); *Tauber v. Commissioner*, 24 T.C. 179, 185 (1955). * * * [*Achiro v. Commissioner*, 77 T.C. 881, 890 (1981).]

See also *Stewart v. Commissioner*, 714 F.2d 977, 990–991 (9th Cir. 1983), affg. a Memorandum Opinion of this Court. In the present case, the citation of Service guidelines in the determination letter is not inconsistent with the presentation of evidence not addressed in the guidelines.

The procedural history of this case indicates that petitioner was well aware from the outset that respondent's sole and unambiguous ground for revocation of petitioner's exemption rested upon the character of the donee schools. Petitioner's overly semantical argument designed to obviate its responsibility under Rule 217(c) "is purely technical, and does not go to the heart of the matter." *J.T. Slocomb Co. v. Commissioner*, 334 F.2d 269, 273 (2d Cir. 1964). Because petitioner has not introduced evidence establishing its exempt status, we must uphold respondent's revocation of that status.

## *Retroactivity*

The remaining issue for decision is the effective date of such revocation. Petitioner argues that, even if it is not entitled to exemption under section 501(c)(3), respondent improperly made the December 22, 1978 revocation of his earlier ruling retroactive to 1974.

Section 7805(b) provides:

SEC. 7805(b). RETROACTIVITY OF REGULATIONS OR RULINGS.—The Secretary may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect.

The Supreme Court has held that the Commissioner has broad discretion, under section 7805(b) and its predecessor, in deciding whether to revoke a ruling retroactively and that his determination is reviewable by the courts only for abuse of that discretion. *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 184 (1957); see *Dixon v. United States*, 381 U.S. 68 (1965).

Through section 601.201(n)(6)(i), Statement of Procedural Rules, the Secretary has limited the Commissioner's discretion to revoke retroactively a favorable ruling on exempt status. The rule provides:

(i) An exemption ruling or determination letter may be revoked or modified by a ruling or determination letter addressed to the organization, or by a revenue ruling or other statement published in the Internal Revenue Bulletin. The revocation or modification may be retroactive if the organization omitted or misstated a material fact, operated in a manner materially different from that originally represented, or engaged in a prohibited transaction of the type described in subdivision (vii) of this subparagraph. In any event, revocation or modification will ordinarily take effect no later than the time at which the organization received written notice that its exemption ruling or determination letter might be revoked or modified. [Codified at 26 C.F.R. sec. 601.201(n)(6)(i) (1978).]

Petitioner contends that respondent can make revocation retroactive only if one of the three conditions in the second sentence of the above rule is present. In a case virtually indistinguishable from the present case, however, the District Court for the District of Columbia held that the third sentence of the rule prescribes the general effective date for revocation of an exemption ruling. *Prince Edward Sch. Foundation v.*

*United States*, 478 F. Supp. at 113. We agree with this interpretation. Although the rule could have been more artfully drafted, the prefatory language of the third sentence ("In any event") indicates that the sentence applies to cases not necessarily within the second sentence.

We thus conclude that respondent has not abused his discretion under section 7805(b) in revoking petitioner's exempt status retroactively to 1974. On January 11, 1972, petitioner received written notice that its exemption ruling might be revoked and thus, under the procedural rule, respondent could have made his revocation retroactive to that date.

Petitioner nevertheless urges us to strike down respondent's action as arbitrary and capricious under *Lesavoy Foundation v. Commissioner*, 238 F.2d 589 (3d Cir. 1956), revg. 25 T.C. 924 (1956). In that case the Court of Appeals for the Third Circuit held that the Commissioner abused his discretion in retroactively revoking a ruling where the taxpayer had in good faith relied upon the ruling. We need not decide whether *Lesavoy Foundation* possesses continuing validity after *Automobile Club of Michigan v. Commissioner, supra,* and *Dixon v. United States, supra.* Compare *Wisconsin Nipple & Fabricating Corp. v. Commissioner*, 581 F.2d 1235, 1238–1239 (7th Cir. 1978), affg. 67 T.C. 490 (1976), with *Pittsburgh Press Club v. United States*, 615 F.2d 600, 606 (3d Cir. 1980). As of 1974, petitioner could not claim good faith reliance upon the 1961 exemption ruling. In addition to the January 11, 1972, letter, the publication of Rev. Rul. 71–447, 1971–2 C.B. 230, gave petitioner advance notice of the change in the Service's position (cf. *Wisconsin Nipple & Fabricating Corp. v. Commissioner*, 67 T.C. 490, 497–498 (1976), affd. 581 F.2d 1235 (7th Cir. 1978)), and the April 20, 1973, technical advice memorandum indicated that petitioner's exempt status would not be revoked for 1969 only because the change in position occurred after that year.[6]

---

[6]Petitioner attached to its reply brief a letter from the District Director dated Sept. 14, 1976, which summarily stated that there would be no change in petitioner's exempt status for 1973. This letter was not included in the certified administrative record filed with the Court. Although we may consider evidence outside the administrative record in revocation proceedings, such evidence must be presented to the Court in accordance with the Rules governing trials. See Rule 217(a), (b) and accompanying notes; see also notes accompanying Rule 213(a), (b). Petitioner explicitly declined to present any additional evidence in this case. Moreover, even if the letter were included in the record herein, our decision would remain unchanged, because the letter does not indicate the reason for the Service's action.

We have held that the Commissioner further limited his discretion under section 7805(b) through Rev. Proc. 80–25, 1980–1 C.B. 667. *Presbyterian & Reform Pub. Co. v. Commissioner*, 79 T.C. 1070, 1089 (1982), revd. on other grounds 743 F.2d 148 (3d Cir. 1984). See also *Lansons, Inc. v. Commissioner*, 622 F.2d 774, 778 (5th Cir. 1980), affg. 69 T.C. 773 (1978). Because the effective date of Rev. Proc. 80–25 is June 30, 1980, subsequent to respondent's final determination letter, the revenue procedure does not affect our decision in the present case.[7]

*Decision will be entered for the respondent.*

---

[7]Referring to rulings or determination letters recognizing exemption, Rev. Proc. 80–25, 1980–1 C.B. 667, 671, provides, in relevant part:

"In cases where a ruling or determination letter was issued in error or is no longer in accord with the holding of the Service, retroactivity of the revocation or modification ordinarily will be limited to a date not earlier than that on which the original ruling or determination letter is modified or revoked."

Compare Rev. Proc. 72–4, 1972–1 C.B. 706, 708 (superseded by Rev. Proc. 80–25), which was in effect on Dec. 22, 1978, and which provided rules for revocation of exemption rulings virtually identical to sec. 601.201(n)(6)(i), Statement of Procedural Rules.