**MUTUAL SAVINGS LIFE INSURANCE CO., Plaintiff-Appellee-Cross Appellant,**

v.

**UNITED STATES of America, Defendant-Appellant-Cross Appellee.**

**No. 72–2776.**

United States Court of Appeals, Fifth Circuit.

Jan. 28, 1974.

Wayman G. Sherrer, U. S. Atty., Birmingham, Ala., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Paul M. Ginsburg, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

J. Gilmer Blackburn, John A. Caddell, Decatur, Ala., for plaintiff-appellee.

Before COLEMAN, MORGAN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

This tax refund suit involves the tax treatment of a life insurance company's acquisition of two blocks of life insurance policies from other insurance companies in reinsurance transactions. Trying the case without a jury on a stipulation of facts and the testimony of one witness, the District Court, following the examples in the Treasury Regulations which it held dictated divergent results, found in favor of the Government on one transaction and in favor of the taxpayer on the slightly different second transaction. Both parties appeal on the ground that the two transactions should be treated the same and in their favor. We conclude that the transactions should be treated alike and in favor of the taxpayer. We affirm in part and reverse in part.

### The Tax Scheme

Although computations under the Life Insurance Company Income Tax Act of 1959, 26 U.S.C.A. § 801, et seq., are generally complicated, the provisions relevant to this case are relatively simple. As premiums on policies are received by a life insurance company, state insurance laws require a portion of the premiums to be set aside as reserves for the

payment of claims. Premium receipts must be reported as income, but to avoid taxing the company on that portion of the premium receipts allocated to reserve requirements, the Act provides that amounts by which reserves are increased may be deducted from current operating income. Concomitantly, when a policy is paid on the death of the insured so that reserves are decreased and the reserved assets are freed for the company's general use, the amount of decrease must be reported as income for tax purposes.

In addition to basic transactions in which an insurance company issues a life insurance policy to an individual, collects premiums, sets aside in reserves a portion of each premium during the life of the policyholder, and then pays the face of the policy upon the insured's death permitting a reduction in reserve requirements, insurance companies reinsure themselves. In such reinsurance transactions, one company transfers a policy to another company, the "reinsurer," which then is entitled to receive the insurance premiums as paid, maintains appropriate statutory reserves, and pays the death benefits when the policyholder dies. Usually large numbers of policies are involved and often they have been in force for a period of time so that substantial amounts of reserves are being held against the policies at the time of the transfer.

*The Reinsured.* In reinsurance transactions, the company which assigns the policies, the "reinsured," can legally reduce its reserves by the amount required to be held in reserve on the assigned policies, but this amount must be reported as income. If any consideration is paid by the reinsured to the reinsurer for assumption of the policy liabilities, the reinsured is entitled to deduct this amount from income. In some cases, the reinsured may receive consideration from the reinsuring company, and such consideration must then be included as income.

*The Reinsurer.* On the other hand, the reinsurer, upon acquiring the policies, must commensurately increase its required reserves, but may immediately deduct this amount from income. Any consideration received from the reinsured must be reported by the reinsurer as income. But if the reinsurer has paid consideration for the policies, the payment cannot immediately be deducted, but must be amortized over the estimated life of the contracts.

When the reinsurer receives consideration in the exact amount of the required reserves, these payments obviously offset each other. The reinsured company reports as income the amount by which its reserves may now be reduced, but deducts the identical amount which it has paid to the reinsurer. The reinsuring company reports as income the amount paid it by the reinsured, but deducts from income the same amount by which its reserves have been increased.

In the two cases at bar, the taxpayer, Mutual Savings Life Insurance Company, an Alabama corporation and a life insurance company within the terms of Section 801 of the Internal Revenue Code of 1954, is a reinsurer. Taxable under Section 802 of the Code, its income is reported on the accrual method of accounting. In the subject transactions, Mutual acquired two blocks of insurance policies from two different companies, Georgia Life and Health Insurance Company and Life Insurance Company of Florida.

The amounts of cash consideration paid to Mutual were not equal to the reserves. In the Georgia Life transaction, the reinsured company, Georgia Life, paid consideration to the taxpayer, Mutual, in an amount less than the required reserves. In the Florida Life transaction, taxpayer Mutual not only received no payment from the reinsured company, Florida Life, but actually paid a substantial sum to it for the policies.

The essence of the dispute in these cases concerns the meaning of the phrase "consideration received from the reinsured" in Section 1.817–4(d)(2)(ii)

of the Treasury Regulations on Income Tax. The taxpayer maintains that this phrase encompasses only the tangible assets labeled by the parties as consideration. It is the Government's position, on the other hand, that the total "consideration received" includes not only the tangible assets transferred, but also the intangible value of the insurance contracts themselves.

### Georgia Life Transaction

■ In the first transaction, taxpayer acquired from Georgia Life and Health Insurance Company life insurance policies for which the legal required reserves were $1,047,142. Taxpayer received from Georgia Life $682,990 in tangible assets. Mutual Life was required to increase its reserves by $1,047,142, which is $364,152 in excess of the value of the tangible assets received.

The District Court held that Mutual was entitled to deduct $1,047,142 for the increase in its life insurance reserves and was required to report as income the $682,990 consideration received from Georgia Life. The net effect, therefore, was to allow the taxpayer a $364,152 excess of deductions over reported income on the transaction.

The Government contends that the "difference between the obligations assumed ($1,047,142) and the tangible assets received ($682,990) represents the payment ($364,152) taxpayer made to Georgia Life for the privilege of taking over this block of business" and that this payment may only be amortized over the useful life of the contracts.

The Government's contention fails because it overlooks the fact that the transaction, as stipulated by the Government, falls squarely within the provisions of Example 1 of Treasury Regulation Section 1.817–4(3), which example gives no recognition to the intangible value of the policies transferred and is not clearly contrary to the provisions of the law and the Regulations. Taxpayer merely followed the pertinent example in the Treasury Regulations, Example 1, Treas.Reg.Sec. 1.817–4(d)(3) as if it were the Y life insurance company.

*Example (1)*. On June 30, 1959, X, a life insurance company, reinsured a portion of its insurance contracts with Y, a life insurance company, under an agreement whereby Y agreed to assume and become solely liable under the contracts reinsured. The reserves on the contracts reinsured by X were $100,000. Under the reinsurance agreement, X agreed to pay Y a consideration of $75,000 in cash for assuming such contracts. Assuming no other insurance transactions by X or Y during the taxable year, and assuming that X and Y compute the reserves on the contracts reinsured on the same basis, X has income of $100,000 under section 809(c)(2) as a result of this net decrease in its reserves and a deduction of $75,000 under section 809(d)(7) for the amount of the consideration paid to Y for assuming these contracts. Y has income of $75,000 under section 809(c)(1) as a result of the consideration received from X and a deduction of $100,000 under section 809(d)(2) for the net increase in its reserves.

The Government contends that this example does not properly reflect the law in that the phrase "consideration received from the reinsured," Treasury Regulations, *supra*, applies not only to tangible assets paid to the taxpayer by the reinsured, but also to the intangible asset value of the acquired life insurance policies. In this example, however, only the tangible consideration transferred between the parties is shown to be considered.

■ A taxpayer has the right to rely upon the Government's Regulations and their published illustrations. Treasury Regulations having the force and effect of law are binding on tax officials, as well as taxpayers. *See* Pacific Nat'l Bank of Seattle v. Comm'r of Internal Revenue, 91 F.2d 103 (9th Cir. 1937).

As stated by the trial court in its decision from the bench, "the Government

cannot just abandon example 1 of the regulations and direct it into some type of obscurity oblivion as if it never existed, whereas the parties do and can fit in that direct pattern. Until the regulation is changed, the Government is obligated to follow it."

We find no error in the District Court's decision regarding the Georgia Life transaction.

### Florida Life Transaction

■ In the Florida Life transaction, Mutual only received the block of policies for which it paid a cash bonus of $274,771 and for which it assumed the obligation of establishing the required reserve of $160,719. The payment for the policies is subject to amortization by the reinsurer taxpayer over the life of the policies, rather than immediate deduction. The District Court, however, treated the transactions as if Mutual had paid Florida Life a bonus total of $435,490, instead of the $274,771 actually delivered, and received the policies, with an intangible value of $160,719 as consideration from Florida Life. Viewed in this way, taxpayer would include $160,719 (the value of the policies) in income, deduct $160,719, for contributions to reserves, offsetting calculations, and amortize the entire $435,490 bonus over the life of the contracts.

Determining that Example 2, Treasury Regulation Section 1.817–4(3), was applicable to this transaction, the District Court found that some consideration

> must have been paid by Florida Life to Mutual for the assumption of liabilities by Mutual Savings under those policies. The parties had not agreed in their instruments as to what that amount was. On the premise that "[t]here is a benefit generally recognized throughout the insurance industry in obtaining business written by other companies and for which substantial premiums or bonuses are from time to time paid," the District Court reasoned that taxpayer assumed the liabilities and paid the cash bonus

because—the insurance business it took over had a substantial value.

But this treatment is inconsistent with the law and the applicable example found in the regulations. Example 2, Treasury Regulation Section 1.817–4(3), sets forth the full economic considerations underlying such a reinsurance transaction:

> *Example (2)*. The facts are the same as in example (1), except X agreed to pay Y a consideration of $100,000 in cash for assuming these contracts and Y paid X a bonus of $17,000 in cash and that this bonus meets the requirements of section 162. Assuming that the reasonably estimated life of the contracts reinsured is 17 years, X has income of $100,000 under section 809(c)(2) as a result of this net decrease in its reserves and a deduction of $83,000 under section 809(d)(7) for the amount of the consideration ($100,000) paid to Y for assuming these contracts, reduced by the bonus ($17,000) received from Y. For the taxable year 1959, Y has income of $100,000 under section 809(c)(1) as a result of the consideration received from X and deductions of $100,000 under section 809(d)(2) for the net increase in reserves and $1,000 (the bonus of $17,000 divided by 17, the reasonably estimated life of the contracts reinsured), under section 809(d)(12). The remaining amount of the bonus ($16,000) shall be amortized over the next 16 succeeding taxable years (16 x $1,000 = $16,000) under section 809(d)(12) at the rate of $1,000 for each such taxable year.

Example 2 is based on the same facts as Example 1: reinsurance of policies with a reserve value of $100,000. Only the tangible transfers are taken into consideration. The effect of cross-transfer is netted as to income and deductions for the reinsured, i. e. the $100,000 paid is reduced by the $17,000 received to arrive at the $83,000 deduction for the reinsured. The reinsurer, however, is again instructed to use the

tangible assets received in its calculations. Thus, it reports $100,000 as income, not a net of $83,000, and it reports the $17,000 as a bonus payment which must be amortized because it was designated as such in the transaction.

If the law were to follow the substance of the situation as contended by the Government in its brief, the example would have held Y to report only $83,000 as income because that is all the "net cash" it received.

Furthermore the regulation only deals with the tax consequences flowing from the $100,000 and $17,000 cash transfers and makes no mention of any intangible consideration.

It appears clear, therefore, that neither the law nor the regulations intended tax consequences to flow from anything but the tangible transfers made between the parties in the way that they are made. At no place does the law or the regulations indicate that the intangible value of the policies is to be treated as consideration received from the reinsured.

The crux of this law goes not to whether the sums are to be taxed, but when they will be taxed. Eventually the Government will receive tax on every dollar of income which the transactions generate. The law having provided for postponement of the tax on the amount placed in reserves, the IRS by administrative action is not now entitled to nullify that benefit.

Mutual is entitled to the tax treatment of the reinsurance transaction with Florida Life as provided in the applicable code provisions and their explanation in Treasury Regulation Section 1.817–4(d)(2)(ii):

(ii) In connection with an assumption reinsurance (as defined in paragraph (a)(7)(ii) of § 1.809–5) transaction, a reinsurer shall in any taxable year beginning after December 31, 1957—

(a) Treat the consideration received from the reinsured in any such taxable year as an item of gross amount under section 809(c)(1), and

(b) Treat any amount paid to the reinsured, to the extent such amount meets the requirements of section 162, as a deferred expense under section 809(d)(12) and amortize such amount over the reasonable estimated life (as defined in subdivision (iii) of this subparagraph) of the contracts reinsured, irrespective of the taxable year in which such amount was paid to the reinsured.

■ Deciding that "the consideration received" does not include any intangible value of the policies transferred under subsection (a), and in light of the stipulation that no tangible payment was received from the reinsured (Florida Life) by the reinsurer (Mutual), there is no inclusion in Mutual's gross income concerning the transaction.

Under subsection (b), the amount paid ($274,771) by the reinsured (Mutual) is to be treated as a deferred expense. Mutual must, therefore, amortize the $274,771 bonus "over the reasonable estimated life of the contracts reinsured."

The $160,719 transferred to reserve in accordance with state law is to be deducted in the current tax year under § 809(d)(2) as an increase in Mutual's reserve obligation.

A literal reading of the code and the regulations, especially the explanatory examples, necessitates this result. The applicable sections speak only of tangible consideration and fail to mention, either by express language or implied usage, the intangible value of the policies.

■ Kentucky Central Life Insurance Co. v. Commissioner of Internal Revenue, 57 T.C. 482 (1972), appeal pending to the Seventh Circuit, is cited by the Government as the only other case which involved the issue presented in this appeal and which is asserted to be contrary to our decision here. In *Kentucky Central* the parties offset a contractual

obligation of the reinsurer to pay $1,650,000 to the reinsured by a "credit equal to the reserves" which the reinsured was then contractually entitled to transfer to its surplus account. It was agreed by the parties that a $1,650,000 purchase price was to be paid for "business reinsured by Kentucky Central hereunder." The facts of our case do not reveal any such offsetting credits for legal obligations of the reinsurer to the reinsured. We recognize, however, that our decision here reflects some conflict with the Tax Court opinion in *Kentucky Central*. We believe, however, that the taxpayers are entitled to frame their business transactions on a plain reading of the tax laws as interpreted by the regulations without recourse to what Congress and the IRS could have and perhaps should have provided, but did not.

This case is remanded to the District Court for appropriate disposition in accordance with this opinion. Taxpayer shall have its costs.

Affirmed in part, reversed in part, and remanded.