LANSONS, INC., Petitioner-Appellee
Cross-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellant
Cross-Appellee.

No. 78–2893.

United States Court of Appeals,
Fifth Circuit.

·July 30, 1980.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Chief, App. Section, Ann Belanger Durney, Richard Farber, Marilyn

E. Brookens, Attys., Tax Division, U. S. Dept. of Justice, Washington, D.C., for respondent-appellant cross-appellee.

Schwartz, Nash, Heckerling, Tescher & Kantor, Martin J. Nash, Robert E. Panoff, Miami, Fla., Attys. of record, for petitioner-appellee cross-appellant.

Before WISDOM, RONEY and HATCHETT, Circuit Judges.

RONEY, Circuit Judge:

Taxpayer claims income tax deductions for the years 1969–71 for contributions to a profit-sharing trust, charging that the Commissioner abused his discretion in revoking retroactively an earlier letter ruling that the trust was "qualified" within the meaning of section 401(a) of the Internal Revenue Code.[1] Agreeing with the Tax Court's determination, 69 T.C. 773, that the Commissioner's retroactive revocation was an abuse of discretion, we affirm.

After some ten years in the men's retail clothing business, Lansons, Inc. sought to reduce the high turnover of employees by adopting a profit-sharing trust. As it was initially adopted in August 1968, the plan included all full-time salaried employees between the ages of 25 and 65 years who earned more than $400 per month. Future employees were also required to have worked one year for Lansons before becoming eligible to participate. The plan provided for 15 percent vesting per year, discretionary contributions on the part of the employer, and allocations of contributions and forfeitures on the basis of compensation.

In November 1968 Lansons, through an insurance agent, requested a determination that the plan was a qualified trust. The schedule of employees submitted with the request showed the following breakdown.

| | |
|---|---|
| Total employees | 24 |
| Excluded for length of service | 8 |
| Excluded because over 65 | 5 |
| Excluded for minimum compensation | 4 |
| Total covered employees | 7 |

The IRS pension examiner recommended eliminating the $400 per month earnings requirement and the salaried-employees-only requirement and decreasing the vesting percentage from 15 to 10 percent. Lansons amended its plan accordingly and resubmitted its request. The schedule of employees as modified to reflect the amendments was computed as follows.

| | |
|---|---|
| Total employees | 24 |
| Excluded for length of service | 9 |
| Excluded for part-time | 1 |
| Employees for 401(a)(3)(A) test | 14 |
| Excluded for maximum age | 3 |
| Excluded for minimum age | 1 * |
| Total covered and participating employees | 10 * |

The figures marked (*) were incorrect. One of the employees, Barbara Whitestone, who had earlier been excluded because of the minimum compensation requirement, was counted as one of the covered employees when that requirement was removed, although she was also ineligible because she was under the minimum age. Thus there were actually only nine covered employees.

On January 31, 1969, the IRS issued a letter approving the trust as a qualified trust under section 401(a). The pension trust examiner wrote the following note on the back of the revised schedule 3:

This annualized compensation permitted a marginally acceptable 401(a)(3)(B) classification, using $9,500 as the breaking point between highly and non-highly compensated employees. (Six of 10 deemed not in prohibited group). Letter issued with a caveat, however. (Almost meet 401(a)(3)(A), incidentally).

The Tax Court found this $9,500 breaking point between highly compensated and non-highly compensated employees was not discussed with the insurance agent representing Lansons.

The favorable determination letter contained the caveat that it was "effective only

---

1. I.R.C. § 401 was extensively amended in 1974. Employee Retirement Income Security Act of 1974, Pub.L. No. 93–406, § 1016, 88 Stat. 932 (1974). All references to section 401 in this opinion are to that section as it existed prior to those amendments.

for the year or years hereafter in which either the percentage tests of Section 401(a)(3)(A) of the Internal Revenue Code are met, or a non-discriminatory classification within the purview of Section 401(a)(3)(B) of the Internal Revenue Code is maintained."

The coverage of Lansons' plan for 1969–71 is summarized in the following table.

| Fiscal year ending | 8/31/69 | 8/31/70 | 8/31/71 |
|---|---|---|---|
| Total employees | 25 | 24 | 32 |
| Excluded for length of service | 10 | 10 | 18 |
| Excluded for part-time | 1 | = | 3 |
| Employees for 401(a)(3) (A) test | 14 | 14 | 11 |
| Excluded for minimum age | 2 | 2 | 3 |
| Excluded for maximum age | 3 | 4 | 2 |
| Participating employees | 9 | 8 | 6 |

Of the participating employees, three were clearly members of the section 401(a)(3)(B) prohibited group since they were officers, stockholders, or supervisors. The IRS contends that additional participating employees were "highly compensated" and thus were also members of the prohibited group. The compensation of the participating employees is shown in this table, with the compensation of the officers, stockholders, or supervisors marked with an asterisk.

| Fiscal year ending | 8/31/69 | 8/31/70 | 8/31/71 |
|---|---|---|---|
| | 36,500 * | 36,400 * | 41,600 * |
| | 29,215 * | 31,200 * | 41,600 * |
| | 28,715 * | 31,200 * | 41,600 * |
| | 15,190 | 15,645 | -0- |
| | 11,166 | 10,705 | 11,764 |
| | 12,232 | -0- | -0- |
| | -0- | 14,028 | 14,413 |
| | 3,443 | -0- | -0- |
| | 3,998 | -0- | -0- |
| | 1,765 | 4,712 | 4,533 |
| | -0- | 3,649 | -0- |

On December 1, 1972, the Commissioner notified Lansons that the favorable determination letter had been revoked retroactively to all open years. The letter, in addition to citing to various regulations, gave these reasons for the action.

Rapid turnover of lower paid employees resulted in contributions inuring to the benefit of the prohibited group.

. . . . .

The exclusion of employees for minimum and maximum age as well as the turnover of rank and file employees resulted in the discrimination prohibited under section 401(a)(3)(A) and 401(a)(3)(B).

In addition, incorrect information submitted at the time of qualification resulted in approval of a plan that would not have qualified otherwise.

The Commissioner issued a notice of deficiency for approximately $26,000 and rejected all of Lansons attempts at settlement.

Under section 7805(b) of the Internal Revenue Code, the Commissioner may revoke a ruling retroactively. *See Automobile Club v. Commissioner*, 353 U.S. 180, 184, 77 S.Ct. 707, 710, 1 L.Ed.2d 746 (1957). The Commissioner, however, has limited his discretion to do so in Treas. Reg. § 601.201(*l*)(5).

Except in rare or unusual circumstances, the revocation or modification of a ruling will not be applied retroactively with respect to the taxpayer to whom the ruling was originally issued or to a taxpayer whose tax liability was directly involved in such ruling if (i) there has been no misstatement or omission of material facts, (ii) the facts subsequently developed are not materially different from the facts on which the ruling was based, (iii) there has been no change in the applicable law, (iv) the ruling was originally issued with respect to a prospective or proposed transaction, and (v) the taxpayer directly involved in the ruling acted in good faith in reliance upon the ruling and the retroactive revocation would be to his detriment.

Treasury regulations are as binding upon tax officials as they are upon taxpayers, and tax officials are required to abide by regulations reasonably based on the statute. *Mutual Savings Life Insurance Co. v. United States*, 488 F.2d 1142, 1145 (5th Cir. 1974); *Brafman v. United States*, 384 F.2d 863, 866 (5th Cir. 1967). Since this regula-

tion is reasonably based on the statute, the Commissioner is required to follow his own regulation in this case. We turn to the particular facts to determine whether he exceeded his discretion under the regulation.

In comparing the facts of this case with the five requirements of Treas. Reg. § 601.-201(*1*)(5), it is plain that there can be a genuine dispute as to only two of those requirements: first, whether there was a misstatement or omission of material facts in the original submission; and second, whether the facts subsequently developed are materially different from the facts on which the ruling was based.

The inclusion of Barbara Whitestone as a participating employee was clearly a misstatement of fact. The question is whether it was material. The Tax Court found the mistake in including her was inadvertent and the error was not material because it would not have justified a change in the ruling. As the court pointed out, that misstatement reduced the percentage of participating employees in the nonprohibited group from 60 percent to 55.5 percent. The dissent agreed that the error was "slight" but thought it could not assume the effect was insignificant. The dissent relied heavily on *Pittman Construction Co. v. United States*, 436 F.Supp. 1215 (E.D. La. 1977). In that case the president and 50 percent owner of the taxpayer and founder of the plan had listed his age (apparently inadvertently) as 55 when he was actually 63. Since the maximum age for covered employees was 55, this resulted in his being covered when he should not have been. From this case, the dissent seems to extract the rule that if there has been any misstatement, the Commissioner may disqualify the plan. Such a rule would ignore the materiality requirement of the regulation itself and we reject it. We must sustain the Tax Court's decision that the inclusion of Barbara Whitestone was not a material misstatement of fact justifying the Commissioner in retroactively revoking the favorable ruling.

The Commissioner contends the Tax Court erred in finding there had been no material change in facts subsequently developed during the operation of the plan. The material change, he argues, occurred when the percentage of prohibited group increased during the years in question. In 1968, the year in which the plan was approved, the IRS determined that four out of ten participating employees or 40 percent were in the prohibited group. Eliminating Barbara Whitestone from these computations makes four out of nine covered employees or 44.4 percent. These figures result from using an annualized salary of $9,500 as the break point between highly and nonhighly compensated employees. In 1969, the Commissioner points out, six of the nine participating employees or 66.7 percent made over $9,500 (or $10,000, which is the figure the Commissioner uses in his brief) and were thus highly compensated. In 1970, six out of eight participating employees or 75 percent made over $9,500 (or $10,000) and were thus "highly compensated." In 1971, five out of six participating employees or 83.3 percent made over $9,500 (or $10,000).

While the Commissioner's argument has a certain facial appeal, it must be rejected. The application submitted to the pension trust examiner clearly showed the nature of Lanson's business, the service and age requirements of the plan, the vesting schedule, and the acute turnover of rank and file employees which motivated the initiation of the plan. There is no indication whatsoever that any of these factors changed during the years in question. There is nothing in the record to remotely suggest that Lansons intentionally discharged employees to benefit those in the plan. The Tax Court found that Lansons made only modest contributions to the plan and paid substantial taxes. In sum, the business continued to operate in the same fashion as was indicated in the original application and the plan was correctly followed without abuse.

Any question as to the trust's qualification arises solely from the operation of the very factors—the heavy turnover of

lower-paid employees and the reasonable one-year service requirement—which were fully known to the IRS at the time it determined that the trust was qualified. Because of the naturally high correlation between permanent employees and higher salaries and between non-permanent employees and lower salaries, any plan designed to lower a high turnover rate through even a modest length of service requirement may skew the coverage of the plan toward the high side and will continue to do so if it fails to motivate employees to remain with the employer. The IRS, expert in this very technical field, was chargeable with that knowledge at the time it initially approved Lansons' plan. We hold that when the submission to the Commissioner discloses the nature of the taxpayer's business and the trust sufficiently to make the effect of the plan in operation as foreseeable to the Commissioner as to the taxpayer, and when the trust is thereafter operated according to the plan submitted and without abuse, a variation in the coverage percentages does not constitute a material change of subsequently developed facts for purposes of justifying a retroactive revocation of a prior favorable determination. By so holding we express no view as to what limitations apply to the Commissioner's authority to test plans in operation or whether this plan in operation would otherwise qualify under section 401(a)(3).

■ Because there was no material misstatement of fact at the time the plan was approved and because the facts subsequently developed were not materially different, except perhaps as to variations occurring in the operation of the plan, the Commissioner has deviated from his own regulations. We hold that when a taxpayer has put substantial good faith reliance upon an IRS determination of its tax position and when a retroactive revocation of that determination will produce an inordinate adverse effect, the Commissioner's failure to abide strictly by his own regulations limiting retroactive revocation of a favorable ruling amounts to an abuse of discretion. See Anderson, Clayton & Co. v. United States, 562 F.2d 972, 981 (5th Cir. 1977),

cert. denied, 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978); Woodward v. United States, 322 F.Supp. 332, 335 (W.D. Va.), aff'd, 445 F.2d 1406 (4th Cir. 1971); 1 J. Mertens, Law of Federal Income Taxation § 3.25, at 3–61 to 3–62 (1974 rev.). The annual contributions in modest amounts made to the plan by Lansons demonstrate its good faith reliance. The inordinate adverse effect of retroactive revocation is obvious here. If the trust is not "qualified," its investment income will not be tax exempt, the employer's contributions will be currently deductible only if the employee's rights with respect thereto are nonforfeitable (I.R.C. § 404(a)(5)), and in that event the employee will be taxed currently on his share of the employer's contribution (I.R.C. § 402(b)). Pittman Construction Co. v. United States, 436 F.Supp. at 1217; Myron v. United States, 382 F.Supp. 590, 595 (C.D. Cal. 1974), aff'd, 550 F.2d 1145 (9th Cir. 1977). Thus the Commissioner abused his discretion in retroactively revoking his earlier letter. Cf. Lesavoy Foundation v. Commissioner, 238 F.2d 589 (3d Cir. 1956) (holding that the Commissioner abused his discretion in retroactively revoking an individualized ruling that an organization was exempt under I.R.C. § 501(a)). See also 4A J. Mertens, Law of Federal Income Taxation § 25B.20 (1979 rev.).

In view of this holding it is unnecessary to decide whether the alternative holding of the Tax Court is correct. The Tax Court held alternatively that, since an eligibility requirement whose purpose and effect are to avoid the immediate coverage of impermanent employees cannot be "discriminatory" within the meaning of section 401(a)(3) and since the high percentage of coverage of the prohibited group was a direct result of such a requirement, this plan did not "discriminate" in favor of the prohibited group within the meaning of the statute.

■ Taxpayer cross-appeals from the Tax Court's denial of attorney's fees, arguing that the Commissioner's conduct justified an award of attorney's fees in this case. Under this Court's holding in Key Buick Co.

*v. Commissioner,* 613 F.2d 1306 (5th Cir. 1980), attorney's fees may be awarded in Tax Court cases only when in litigation the taxpayer is cast in defendant's role. Although in the administrative proceedings prior to litigation Lansons may have been cast somewhat in the role of defendant, during the litigation of this case it acted solely in the role of plaintiff. The denial of attorney's fees must be affirmed under *Key Buick.*

AFFIRMED.