GROSS DISTRIBUTING COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gross Distributing Co. v. Commissioner
Docket No. 5988-81R.
United States Tax Court
T.C. Memo 1982-264; 1982 Tax Ct. Memo LEXIS 474; 43 T.C.M. (CCH) 1357; T.C.M. (RIA) 82264; 3 Employee Benefits Cas. (BNA) 1507; May 17, 1982. *474 P established pension and profit-sharing plans with respect to which the Commissioner issued favorable determinations in 1961. Over the years, participation in such plans changed, and by the end of the 1972 plan year, the sole remaining participant in both plans was the president and sole stockholder of P. In 1977, P resolved to terminate the plans. However, the Commissioner determined that such plans violated the coverage requirements of sec. 401(a)(3)(B), I.R.C. 1954, for the 1972 and subsequent plan years and revoked the qualification of the plans for such years. Held, the plans violated the coverage requirements of sec. 401(a)(3)(B), I.R.C. 1954, for such years. Held, further, the Commissioner's retroactive revocation of the qualification of the plans did not constitute an abuse of discretion. Martin Welenken and Judith A. Rosenberg, for the petitioner. Robert E. Touchton, for the respondent. SIMPSON
MEMORANDUM OPINION SIMPSON, Judge: The petitioner has instituted this action pursuant to section 7476 of the Internal Revenue Code of 1954[1] for declaratory judgment relating to the qualification of pension and profit-sharing plans. We must decide whether the petitioner's plans qualified during the years in issue and, if not, whether the Commissioner's retroactive revocation of the qualification of the plans constituted an abuse of discretion. *477 Pursuant to Rule 217(b), Tax Court Rules of Practice and Procedure, the parties filed with the Court the administrative record relating to the requests for determination that the plans were qualified and to the revocation of such determination. The case was submitted fully stipulated pursuant to Rule 122. The petitioner, Gross Distributing Company, is a corporation organized under the laws of the State of Kentucky with its principal place of business in Lexington, Ky., at the time it filed its petition in this case. In November 1960, the petitioner adopted pension and profit-sharing plans, and in January 1961, it submitted a copy of such plans together with the required data to the District Director of Internal Revenue, Louisville, Ky., for a determination that the plans qualified under section 401 and that the trusts were exempt from tax under section 501. On March 1, 1961, the board of directors made a number of amendments to the plans. As amended, the pension plan covered salaried employees between the ages of 30 and 55 and with annual earnings in excess of *478 $ 3,600. For the first year, the pension plan required 2 years of service for an employee to participate; but the service requirement was to increase over the years, and after the plan had been in effect for 4 years, an employee would be required to have 5 years of service to participate. The profit-sharing plan contained the same minimum and maximum age requirements and limited participation to salaried employees with 2 years of service. Both plans were non-contributory. The pension plan, but not the profit-sharing plan, also applied to the employees of Harlan Beer Distributing Co., a business individually owned and operated by Clark J. Gross. In connection with the initial request for a determination, the petitioner submitted the following information concerning the qualification of the plans: Participating
3
Ineligible because of: Part-time
1
Hourly wage
5
Commission
4
Length of service
1
Minimum age
2
Minimum compensation
2
Total employees
18
In connection with such request, the petitioner also submitted the following information concerning the salaried employees: Name
Office
Stock
Occupation
Gross Distributing Co.
Clark J. Gross
President &
100%
General Manager
Secretary
Glenn E. Pratt
V. Pres.
Office Manager
B. F. Gross
Truck Driver
Bobbie G. Morgan
Stenographer
Luann Parsons
Clerk
J. Grant Gross
Harlan Beer Distributing Co.
Verlis J. Asher
Manager
Jarvis Harrison
*479 Name
Basic Salary
Participant
Gross Distributing Co.
Clark J. Gross
$ 30,000
Yes
Glenn E. Pratt
7,200
Yes
B. F. Gross
4,860
No
Bobbie G. Morgan
3,120
No
Luann Parsons
3,120
No
J. Grant Gross
1,300
No
Harlan Beer Distributing Co.
Verlis J. Asher
4,940
Yes
Jarvis Harrison
1,800
No
No March 16, 1961, the Commissioner issued determination letters stating that both plans qualified under section 401(a) and that both trusts were exempt under section 501. These letters contained the following caveat: "Attention, however, is invited to Section 1.401-1(b)(3) of the Income Tax Regulations under the 1954 Code which states in part: 'The law is concerned not only with the form of a plan but also with its effects in operation.'" In December 1970, the petitioner requested determinations that proposed investments by both the pension and profit-sharing trusts would not constitute prohibited transactions and would not result in the trusts losing their tax exemption. In connection with such requests, the following information was submitted in March 1971: Total employees
21
Ineligible
17
Eligible
4
Participating
4
*480 The participating employees as reported in the submission were: Supervisory
Total
Name
Officer
Stock
Duties
Compensation
Clark J. Gross
Yes
100%
Yes
$ 41,000
Glenn Pratt
No
No
11,650
B. F. Gross
No
No
10,350
Doris Cole
No
No
5,206
By letters dated April 5, 1971, the IRS determined that the petitioner's proposed investments would not adversely affect the prior qualification of the plans or the exempt status of the trusts. Such letters stated that: "This is not a determination relating to continued qualification of the plan and trust, or to prohibited transactions under section 503 of the Code." On January 22, 1971, Doris Cole's interest was terminated. The plans operated on the basis of a year ending November 30, and at the beginning of the 1972 plan year, there were only three remaining participants in the plans. On February 2, 1972, Glenn Pratt terminated his employment, and on April 3, 1972, B. F. Gross became a commission salesman, thereby ineligible to participate further in the plans. [2] Thus, at the close of the 1972 plan year, Clark Gross was the sole remaining participant. The petitioner contributed $ 626 *481 to the plans for that year. By letter to the petitioner's accountant dated May 15, 1972, Horace Clay, the plan advisor, expressed concern over the continued qualification of the plans. In such letter, he suggested a number of ways in which the plans could be amended to avoid disqualification, including the lowering of the minimum age and service requirements. He also suggested opening up the plans to other categories of employment. Another letter from Mr. Clay to Clark Gross dated September 26, 1973, reiterated his concern and suggested that the company bring in additional salaried employees as quickly as possible. At that time, Mr. Clay suggested a possible lowering of the minimum age requirement to 25 and the minimum service requirement to 1 year. In the fall of 1973, the petitioner's accountant wrote to Mr. Clay and indicated that Clark Gross considered that the plans no longer served a business purpose and that they should be terminated. However, little, if any, action had been taken to terminate the plans as of January 24, 1975, as evidenced by a letter to Clark Gross *482 from the accountant. In June 1975, the petitioner's accountant contacted Mr. Clay about scheduling a meeting to discuss termination of the plans. A new plan advisor was consulted, and after a number of communications between him and the accountant, the board of directors of Gross Distributing Company resolved, on November 16, 1977, to terminate the pension and profit-sharing plans effective November 30, 1976. Such resolutions provided: This plan is terminated due to a large repayment debt and the requirements of ERISA. [3] The debt and the ERISA requirements create an inability to properly fund the plan in the future. Since all participants except the principal shareholder have left the employ of the corporation, the original purpose of the * * * Plan is no longer in existance [sic]. In March 1978, the petitioner requested a determination that the plans were qualified when terminated. On January 23, 1979, the IRS made a proposed determination that neither plan met the requirements of section 401. The petitioner filed an appeal in May 1979, and on December 29, 1980, the final revocation *483 letter was issued for both plans. In such letter, the qualification of the plans was revoked for the 1972 and subsequent plan years in part because the plans failed to meet the coverage requirements of section 401(a)(3)(B). Section 401(a) sets forth the requirements that pension and profit-sharing plans must meet to be a qualified plan, and if the plan qualifies, the trust thereunder is exempt from taxation by section 501(a). We must decide whether the petitioner's pension and profit-sharing plans satisfied the coverage requirements of section 401(a)(3)(B), [4] which provided: (a) Requirements *484 for Qualification.--A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section-- (3) if the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits * * * (B) such employees as qualify under a classification set up by the employer and found by the Secretary not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees; Section 401(a)(3)(B) deals with coverage, and in effect, conditions qualification of a plan upon the Commissioner's finding that the classification of employees eligible to participate in a plan does not discriminate in favor of officers, shareholders, supervisory employees, or highly compensated employees (the *485 prohibited group). See Pulver Roofing Co. v. Commissioner,70 T.C. 1001 (1978); Wisconsin Nipple and Fabricating Corp. v. Commissioner,67 T.C. 490 (1976), affd. 581 F. 2d 1235 (7th Cir. 1978); Babst Services, Inc. v. Commissioner,67 T.C. 131, 136 (1976). Since the enactment of this provision, the regulations have always provided that the law is concerned not only with whether a plan is discriminatory in form, but also with its effects in operation. See sec. 1.401-1(b)(3), Income Tax Regs.Section 1.401-3(b), Income Tax Regs., deals with coverage and states: (b) If a plan fails to qualify under the percentage requirements of section 401(a)(3)(A), it may still qualify under section 401(a)(3)(B) provided always that (as required by section 401(a)(3) and (4)) the plan's eligibility conditions, benefits, and contributions do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or the highly compensated employees. [Emphasis added.] During the years in issue, Clark Gross was the *486 sole individual covered by the plans although the petitioner had between 16 and 19 employees during such years. Furthermore, he was a corporate officer, supervisor, 100-percent shareholder, and the most highly compensated employee. On this record, it is very clear that the petitioner's pension and profit-sharing plans discriminated in favor of the prohibited group for the 1972 and subsequent plan years. See Pulver Roofing Co. v. Commissioner,70 T.C. at 1010-1011; Wisconsin Nipple and Fabricating Corp. v. Commissioner,67 T.C. at 494; cf. Cornell-Young Co. v. United States,469 F. 2d 1318, 1324-1325 (5th Cir. 1972); Babst Services, Inc. v. Commissioner,supra.
The petitioner argues that its plans should not be disqualified for the years at issue because the fact that Clark Gross was the only qualified participant was due to alleged unforeseen changes in the business. It relies on our holdings in Ryan School Retirement Trust v. Commissioner,24 T.C. 127 (1955), and Sherwood Swan & Co. v. Commissioner,42 T.C. 299 (1964), affd. 352 F. 2d 306 (9th Cir. 1965), *487 as authority for permitting the continuing qualification of plans where prohibited discrimination is the result of unforeseeable or unexpected occurrences so long as the plan's allocation formula is not inherently discriminatory. Such reliance is misplaced. Both Ryan and Swan involved the question of discrimination in contributions or benefits (see section 401(a)(4), not coverage; and in both of those cases, it was found that the plans were not discriminatory during the years in issue. The petitioner also cites Lansons, Inc. v. Commissioner,69 T.C. 773 (1978), affd. 622 F. 2d 774 (5th Cir. 1980), for support, but that case is distinguishable. In Lansons, the Court held that a classification was not discriminatory where the purpose of the eligibility requirements was to avoid the immediate coverage of nonpermanent employees. Our concern in Lansons was that minor year-to-year fluctuations in coverage due to changes in business conditions or employee turnover should not cause a plan to be qualified in one year and nonqualified the next year. There, a profit-sharing plan was found to have met the coverage requirements of section *488 401(a)(3)(B). The Court found the eligibility provisions to be reasonable under the circumstances. The plan did not limit coverage to salaried employees. Furthermore, the age and service requirements were more liberal than in the present case. The record in this case reveals that both plans covered salaried employees only. Furthermore, both plans contained requirements of a minimum age of 30 and a maximum age of 55, and the service requirement was 5 years in the pension plan and 2 years in the profit-sharing plan. These requirements did much more than prevent minor fluctuations in the coverage of the plan from year to year--they severely limited participation, and once the former employees left the plan, such requirements made it difficult for new employees to qualify. The petitioner also argues that it was its longstanding intention to terminate the plans due to the uncertain state of the law and claims that it was an abuse of the Commissioner's discretion to revoke retroactively the qualification of the plans for the 1972 and subsequent plan years. We disagree. In deciding whether *489 to revoke a ruling retroactively, the Commissioner has broad discretion, and the courts cannot interfere with his action unless there is a clear abuse of his discretion. Automobile Club of Michigan v. Commissioner,353 U.S. 180, 184 (1957); see Dixon v. United States,381 U.S. 68, 71 (1965); Pulver Roofing Co. v. Commissioner,70 T.C. at 1011. In Pulver Roofing, this Court faced the question of whether the Commissioner had abused his discretion in revoking retroactively his determination that a plan qualified under section 401(a)(3)(B), and we adopted a two-part test: First, we looked to the participation in the plan for the years at issue without regard to the conditions that led to such participation, and we found that for such years, the plan discriminated in favor of the prohibited group. Secondly, we considered the conditions that led to such discrimination to decide whether the Commissioner was justified in revoking the qualification retroactively, and we held that each claim had to be evaluated on the basis of all the facts and circumstances of the case. There, we found that since there had been a significant change *490 in the business, since that change appeared to be permanent, and since the change resulted in increased participation by the prohibited group and a reduction in the participation by other employees, the Commissioner was justified in revoking the qualification retroactively inasmuch as the plan had not been amended to take into consideration such changes in the business and employee participation. When the rationale of Pulver Roofing is applied to the facts of the present case, the conclusion is clear. During the years at issue, Clark Gross was the only eligible participant, and he was a member of the prohibited group. Thus, for those years, the plans were clearly discriminatory. Moreover, that situation was apparently due to a permanent change in the business, and despite the warning and advice by the consultant to change the plans to broaden their participation, the plans were not amended and continued to contain restrictive service and age requirements. In this case, there is additional justification for the Commissioner's action. It is a longstanding policy of the Internal Revenue Service that *491 a taxpayer may rely on a ruling unless there is a material change in the facts or unless the ruling is revoked. Lansons, Inc. v. Commissioner,69 T.C. at 786; Wisconsin Nipple and Fabricating Corp. v. Commissioner,67 T.C. at 497. However, here there was a material change in the facts: The Commissioner's only determination with respect to the coverage of the plans occurred in 1961, and when he made that determination, 3 out of 18 employees were eligible to participate in the plans, but by the end of the 1972 plan year, only Clark Gross was eligible. Such a change in the material facts meant that the petitioner was no longer justified in relying on the earlier determination. Wisconsin Nipple and Fabricating Corp. v. Commissioner,67 T.C. at 496; see generally sec. 601.201(l), Statement of Procedural Rules. In addition, the petitioner had been given constructive notice that its rulings could no longer be relied upon. After the issuance of the petitioner's favorable determination letters, the IRS issued Rev. Rul. 66-13, 1966-1 C.B. 73, and Rev. Rul. 69-398, 1969-2 C.B. 58, which impliedly revoked the *492 earlier determinations secured by the petitioner. In Rev. Rul. 66-13, supra, the Commissioner ruled that a plan in which the only participants were members of the prohibited group would be unacceptable. Similarly, in Rev. Rul. 69-398, supra, the Commissioner ruled that a plan covering 6 out of 14 employees was discriminatory because the plan was limited to salaried employees with 3 years of service and because 5 out of the 6 covered employees each earned a greater amount than any of the noncovered employees. We do not know whether the petitioner was in fact aware of these revenue rulings, but we do know that it was warned by its plan advisor of qualification problems and that no action was taken. Hence, in view of the material changes in the participation by the prohibited group in the petitioner's plans and in view of the fact that the petitioner was on constructive notice, prior to the years in issue, that the IRS no longer considered similar plans to be qualified, we can find no reason to disturb the Commissioner's action, and accordingly, we hold that his retroactive revocation did not constitute an abuse of discretion. See Wisconsin Nipple and Fabricating Corp. v. Commissioner,67 T.C. at 496-498. *493 Decision will be entered for the respondent.
Footnotes
1. All statutory references as to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. B. F. Gross completely terminated his employment with Gross Distributing Co. on July 5, 1974.↩
3. Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 88 Stat. 829.↩
4. Sec. 410(b) was added to the Code by sec. 1011 of the Employee Retirement Income Security Act of 1974, Pub. 1. 93-406, 88 Stat. 900, and now contains the coverage requirements applicable to qualified plans. Such section is generally applicable to plan years beginning after Dec. 31, 1975. Sec. 1017 of ERISA, 88 Stat. 932. However, for purposes of this case, the requirements are not materially different from those of sec. 401(a)(3)(B)↩, and for convenience, we shall refer only to that section.