PRAIRIE STATES LIFE INSURANCE
COMPANY, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 83–5100.

United States District Court,
D. South Dakota, W.D.

May 17, 1985.

Donald R. Shultz of Lynn, Jackson, Shultz & Lebrun, P.C., Rapid City, S.D. for plaintiff.

Nancy Morgan and Frank Gokey, Tax Div., Dept. of Justice, Washington, D.C., David R. Brennan, Minneapolis, Minn., for the U.S.

## MEMORANDUM OPINION

BOGUE, Chief Judge.

### FACTS

This is an action for the recovery of taxes paid by a life insurance company. The Plaintiff, Prairie States Life Insurance Company (Prairie States), is a stock life insurance company, which sold several different types of participating life insurance policies, which gave policyholders the right to receive dividends,[1] although the contract language which provided for the payment of annual dividends varied somewhat with the type of policy.

Policyholders could, at their option, receive the dividends directly, apply them toward additional insurance purchases, or leave the dividends deposited with Prairie States to earn interest. One issue concerns those dividends, or portions thereof, which policyholders chose not to receive as direct cash payments, *i.e.*, those dividends or portions of dividends which were applied to the purchase of paid-up insurance or renewal premiums, or were left on deposit with Prairie States.

Prairie States treated the dividends not paid directly to policyholders as return premiums pursuant to I.R.C. § 809(c)(1) (1954) on its corporate tax returns for the years 1975 through 1978. This treatment allowed Prairie States to exclude this amount from Prairie States' premium income. The Internal Revenue Service (IRS) ruled that

---

1. The term "dividend" is used here in its ordinary sense. It is used later in this opinion in the context of its specific definition.

the amounts excluded from premium income were dividends to policyholders for federal income tax purposes and not return premiums and correspondingly increased Prairie States' premium income.

The second issue involves a December 1978 agreement between Prairie States and General Security Life Company (General Security), an unrelated insurance company, whereby Prairie States insured General Security for certain of its policy liability. General Security remained directly liable to the policyholders under the insurance agreement; the policyholders were not advised that Prairie States had agreed to reinsure General Security.

On its 1978 corporate income tax return, Prairie States included as income the assets (the reinsurance premium) of $849,751 it received from General Security. It deducted $1,062,189, the amount of the increase in its reserves directly attributable to the reinsurance agreement.

The IRS ruled that Prairie States received income in 1978 equal to the value of the increase in reserves, $1,062,189. It further determined that Prairie States had paid General Security a reinsurance commission of $212,438 for the business—the value of the reserve liabilities of $1,062,189, less the reinsurance premium of $849,751. According to the IRS, the $212,438 was to be treated as a deferred expense amortizable over five years.

Based on the IRS findings described above, Prairie States was assessed tax deficiencies for the years 1975 through 1978. Prairie States paid the assessments and filed for a refund. Prairie States filed this lawsuit after the IRS denied the request or refund. The United States counterclaim for unpaid tax and interest for the years 1975 through 1977, assessed subsequent to the filing of this action.

The cause is now before this Court on cross motions for summary judgment. The only issues remaining to be resolved between the parties are those described herein,[2] and the parties agree that as to those issues, no material question of fact exists to preclude summary judgment.

## DISCUSSION

### I.

The first issue involves whether certain payments to stockholders are "return premiums" within the meaning of U.S.C. § 809(c)(1). District Judge Rogers succinctly described the three-phase system of taxation which makes the characterization significant as follows:

> Phase I imposes a tax at the full corporate rate on the lesser of: (1) the insurance company's taxable investment income (*i.e.*, portion of the net investment income annually earned which exceeds the amount of investment income needed to meet future policy obligations to policyholders); or (2) the company's gain from operations (*i.e.*, the excess of income over expenses).
>
> If the company's gain from operations is greater than the company's taxable investment income, the company pays a full corporate tax on the taxable investment income and also pays, as phase II, a full corporate tax on one-half of the amount by which the gain from operations exceeds the taxable investment income.
>
> In a situation where the company's gain from operations exceeds the taxable investment income, the one-half of the difference that escapes phase II taxation is put in a special account and accumulated on the tax records. If the company decides later on to use this money, it is then taxed at the full corporate rate as phase III.

*Security Benefit Life Ins. Co. v. United States*, 517 F.Supp. 740, 745 (D.Kan.1980), aff'd in pt., 726 F.2d 1491 (10th Cir.1984).

Prairie States argues that these payments were return premiums under Section 809(c)(1), and are deductible from the company's gain from operations to arrive at

---

**2.** The United States advised the Court by its responsive motion filed October 29, 1984, that the Plaintiff had made acceptable settlement offers on all other issues.

phase II income. On the other hand, the government argues that payments were dividends, and represent a limited deduction against investment income in phase I. Higher taxable income results if the payments are dividends rather than return premiums. Section 809(c)(1), negatively defines return premiums as "amounts returned [to policyholders] where the amount is not fixed in the [insurance] contract but depends on the experience of the company or the discretion of the management shall not be included in return premiums." Further, Treasury Regulation § 1.811–2(a) provides, in pertinent part, that "any payment not fixed in the contract which is made with respect to a participating contract ... shall be treated as a dividend to policyholders."

Prairie States contends that, even if the Court construes the statutes and regulations narrowly, the payments in question fall within the statutory definition of return premiums because the company had no choice but to make the payments. Prairie States salespeople used dividend scales, or estimates of projected dividends, as a selling tool. The Plaintiff argues that the use of the scales obligated it to pay a fixed amount of dividends, and that Prairie States has always paid the amount of dividends stated in its scales.

Prairie States also points to the deposition testimony of Donald D. Graham, South Dakota's Chief Examiner of the Division of Insurance, as further evidence that the payments were not discretionary. Mr. Graham testified that if a South Dakota licensed insurance company writing participating policies refused to pay dividends, the State would attempt to insure that policyholders received their dividends. Graham Dep. at p. 9. However, Mr. Graham also admitted that no state law remedy exists which allows the Division of Insurance to enforce dividend payment. *Id.* at 11.

Prairie States argues that fixed payments are compelled by three factors:

1. Market forces (prospective policyholders would not purchase participating policies absent assurances of fixed premium payments).

2. The company's dividend scales.

3. The threat of retaliation of the State Division of Insurance.

The dividend scales employed by Prairie States, however, were not part of the insurance contract. Moreover, the contract did not fix the amount of dividends. The Section 809(c)(1) language seems to compel the conclusion that the payments were not return premiums.

However, Prairie States argues that *American National Ins. Co. v. United States*, 231 Ct.Cl. 604, 690 F.2d 878 (1982) compels an opposite result. In *American National*, the Plaintiff insurance company entered into "experience rating refund" agreements with policyholders. The agreements provided for the return of excess or redundant premiums [3] to the policyholder. *American National*, 690 F.2d at 880. The contract did not specify the method of calculating the reserve for unreported claims, but followed well established industry standards. *Id.* at 885. The Court observed: "The fact that every detail ... was not specified in the contract ... does not mean the amount of the refund was not fixed in the contract." *Id.* As an example, the Court noted that even the IRS concedes that policy-cancellation refunds are return premiums, even when the contract does not explicitly so provide. *Id.*

The *American National* Court concluded that the relevant legislative history indicated Congressional intent that insurance companies may return excess or redundant premiums without being taxed on those amounts before distributed. *Id.* at 883. At the same time, Congress provided for assessing pre-distribution taxes on any return of investment income to policyholders. *Id.*

---

**3.** That portion of phase II or underwriting income in excess of the amount required to pay claims and meet expenses.

The dispositive question is whether the payments here constituted distribution of excess or redundant premium income, or income earned by the Plaintiff through its investments. It appears the parties agree that the payments made included both excess premium income and investment income. Plaintiff admits that the payments included investment earnings, and concedes that those investment earnings were properly taxed as dividends. Prairie States therefore seeks to have only that portion of the payments representing excess premiums declared return premiums.

The government responds that no authority allows splitting a dividend into return of investment income and return of excess premium for federal income tax purposes. Absent such splitting, the government fails to demonstrate how the intent of Congress (to tax investment earnings but not returned excess premiums) may be effectuated. The only equitable and appropriate solution is to permit the United States to assess tax on investment income returned to policyholders by classifying it as dividends, and permit Plaintiff to deduct the return of excess premiums by classifying them as return premiums.

As to the "management discretion" argument, the *American National* Court pointed out, and the United States concedes on page 22 of its initial brief supporting its motion for summary judgment, that the need to follow well established industry standards may deprive an insurance company of any ostensible discretion, even if the industry standards are not articulated in the contract. Prairie States, under the watchful eye of the State Division of Insurance, admittedly exercised some discretion in preparing the dividend scales. However, this Court agrees with the *American National* Court which stated: [i]f Section 809(c)(1) requires the absence of *any* discretion on the part of management, it is difficult to see how any refund could ever qualify as a return premium." *American*

*National,* 690 F.2d at 887 (emphasis added). The constraints placed upon Prairie States by the Division of Insurance and well established industry standards allowed no more practical discretion than possessed by the *American National* Plaintiff.[4]

Accordingly, the Court adopts the *American National* approach, and finds that Prairie States is entitled to deduct as a return premium within the meaning of Section 809(c)(1) that portion of any payment made to a policyholder which represents the return of excess or redundant premiums, *i.e.,* phase II or underwriting income.

## II.

■ The second question concerns Prairie States' insurance agreement with General Security. At issue is the amount includable as income to Prairie States in 1978 for assuming liability on policies written by General Security, as well as the amount deductible from premium income as a result of Prairie States' increase in reserves.

### A. *Income*

Prairie States claims that the amount includable as income is limited to $849,751, the amount of the reinsurance premium from General Security. The $849,751 represents the tangible assets received. Prairie States takes the position that it received no consideration (and therefore no income) in excess of the tangible assets.

Upon its agreement to reinsure General Security, Prairie States increased its reserves in the amount of $1,062,189, as required by South Dakota law. The United States argues that because the statutory increase in reserves reflects the amount of liability assumed by Prairie States, it follows that the value Prairie States received (*i.e.,* the income) was equal to the liabilities undertaken. *See United States v. Davis,* 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962); *Crane v. Comm.,* 331 U.S. 1, 67

---

**4.** The United States seeks to distinguish *American National* from the instant case on the facts, pointing out that the policies in *American National* were nonparticipating. The Court finds the distinction immaterial. If anything, the fact that the policies here were participating only buttresses the Plaintiff's argument that it had no discretion in making payments.

S.Ct. 1047, 91 L.Ed. 1301 (1947). This principle of law, that in an arm's length transaction the parties are deemed to have given and received equal value for income tax purposes, has been called the *Crane/Davis* principle.

Prairie States contends, however, that ·the government errs in equating true liability for tax purposes with the increase in statutory reserves. Prairie States cites *Mutual Savings Life Ins. Co. v. United States*, 488 F.2d 1142 (5th Cir.1974), and *Security Benefit Life Ins. Co. v. United States*, 726 F.2d 1491 (10th Cir.1984), in support of its position.

In *Mutual Savings*, the insurance company deducted over $364,000 in excess of reported income, following a reinsurance transaction like the one here. The *Mutual Savings* focused on Treasury Regulation Section 1.817–4(d). 488 F.2d at 1145. The Court held that the reinsurer must report as income only the tangible consideration received, thereby excluding any intangible value. *Id.* at 1145–46.

The *Security Benefit* Court examined the revised version of Treasury Regulation Section 1.817–4(d), which was amended in 1976 in response to *Mutual Savings*.[5] The Security Benefit held that the facts did not precisely fit the regulation, and went on to note:

[I]t is clear that the IRS intended by the change in the regulation to support the position that the agency takes in the instant litigation. ... While courts often defer to the IRS view expressed in interpretative regulations, particularly long-standing ones, this is not an appropriate case for such deference. ...

Indeed, since the IRS changed the regulation adopted in 1962 in response to its own loss in *Mutual Savings*, and deference should go to the 1962 regulation,

which stood unchanged for fourteen years. (citations omitted) *Security Benefit*, 726 F.2d at 1494.

The government urges the Court to reject both *Mutual Savings* and *Security Benefit*, arguing that the former is moot because of the changes in the regulations, and the latter is incorrect in that it calls for an "irrational and totally unjustified result." Brief of the Defendant at 48, n. 20. Furthermore, the government argues that *Kentucky Central Life Ins. Co. v. Comm.*, 57 T.C. 482 (1972), contains the correct statement of the law. There, under similar facts, the Tax Court held that the reinsurer's income for tax purposes equalled the amount of the reserve liability; 57 T.C. at 498 allowing the taxpayer to deduct the excess of reported income, would produce a "windfall tax benefit." *Kentucky Central*, 57 T.C. at 498.

*Kentucky Central* clearly departs from the reasoning of the Fifth and Tenth Circuits. In *Security Benefit*, however, the Court noted one additional factor which comports with Prairie States' argument, and compels a conclusion in the Plaintiff's favor here. The reinsurer in *Security Benefit* showed that the statutory reserve increase was unrealistic because of the use of an artificially low interest rate. Here, Prairie States offered the uncontradicted affidavit of Mr. Thomas McComb, a consulting actuary, which indicated that if the reserves had been increased by an amount based upon more reasonable expectations of mortality and interest than required by state law, the reserve increase would have equaled the net amount of assets received by Prairie States. McComb Aff. (Oct. 15, 1984) at 2.

The reasoning of the Tenth Circuit in *Security Benefit* is compelling. The Court holds that the amount of income includable by Prairie States as a result of the reinsur-

---

**5.** The 1976 amendments to Treasury Regulation Section 1.817–4–(d) provide that when the reinsurer receives a lesser amount of tangible assets as compared to the increase in reserves, the reinsurer shall be treated as

"(A) Having received from the reinsured consideration in an amount equal to the net amount of the increase in the reinsurer's reserves resulting from the transaction, and (B) Having paid the reinsured an amount for the purchase of the contracts equal to the excess of the amount of such increase in the reinsurer's reserves over the net amount received from the reinsured."

ance agreement with Security General equals $849,751, the value of tangible assets received.

### B. *Deduction*

Finally, the Court must decide the amount deductible from premium income. Prairie States claims that it should be allowed to deduct the $1,062,189 which was required to increase reserves under state law, as a premium arising out of "reinsurance ceded" pursuant to Section 809(c)(1). That section provides in part that gross income is to be reduced by "premiums and other consideration arising out of reinsurance ceded."

Reinsurance ceded is defined by Treasury Regulation section 1.809–4(a)(1)(iii) as

an arrangement whereby the taxpayer (the reinsured) remains solely liable to the policyholder, whether all or only a portion of the risk has been transferred to the reinsurer. Such term includes indemnity reinsurance but does not include assumption reinsurance transactions.

Treasury Regulation Section 1.809–5(a)(7)(iii) defines "assumption reinsurance" as "an arrangement whereby another person (the reinsured) becomes solely liable to the policyholders on the contracts transferred by the taxpayer." It is undisputed that the reinsurance agreement between Prairie States and General Security was an indemnity agreement, not an assumption agreement. The distinction between indemnity and assumption reinsurance is critical. In an assumption agreement, the amount paid to the reinsured by the reinsurer is treated as a deferred expense and amortized over the estimated life of the policies. Treasury Regulation Section 1.817–4(2)(iii). The IRS concedes that the regulations which specify the manner in which payments are made and liabilities assumed to assumption reinsurance agreements do not expressly apply to indemnity reinsurance agreements. Nevertheless, the IRS urges the Court to treat the two types of agreements alike, notwithstanding the regulations, in order to achieve a rational tax result. However, the regulations are clear on this point.

Had Congress intended that assumption reinsurance and indemnity reinsurance be treated alike, it would not have expressly excluded assumption reinsurance transactions.

Moreover, it does not appear that permitting Prairie States to deduct an amount in excess of income declared automatically results in a tax windfall. As noted in both *Mutual Savings* and *Security Benefit*, the reinsurer must, in future years, reduce its reserves as the reinsured pays death benefits under the policies. As the reserves are reduced, the entire amount of the decrease must be reported as income. The government will therefore receive tax on the entire amount of the reserves, but must wait until such time as the transaction properly generates income in excess of the tangible assets. *See Security Benefit,* 726 F.2d at 1495.

Therefore, Prairie States may deduct from premium income the amount of the statutory increase in reserves, $1,062,189.

### SUMMARY

For all the foregoing reasons, Plaintiff Prairie States Life Insurance Company's motion for summary judgment will be granted, and it is further ordered that the Defendant United States' cross motion for summary judgment will be denied.

This Memorandum Opinion constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure.